# GOODYEAR'S INDIA RUBBER GLOVE MANUFACTURING COMPANY *v.* GOODYEAR RUBBER COMPANY.

**APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.**

No. 49. Argued October 30, 31, 1888. — Decided December 10, 1888.

The name of "Goodyear Rubber Company," containing a name descriptive of well-known classes of goods produced by the process known as Goodyear's invention, is not one capable of exclusive appropriation; and the addition of the word "Company" only indicates that parties have formed an association to deal in such goods, either to produce or to sell them.

Relief in equity to restrain unfair trade is granted only where the defendant, by his marks, signs, labels, or in other ways, represents to the public that the goods sold by him are those manufactured or produced by the plaintiff, thus palming off his goods for those of a different manufacture, to the injury of the plaintiff.

IN EQUITY to restrain the use of a company name in business. The case is stated in the opinion.

*Mr. Samuel R. Betts* and *Mr. J. E. Hindon Hyde* for appellants, (*Mr. Frederic H. Betts* was also on the brief,) cited: *McLean* v. *Fleming*, 96 U. S. 245; *Sawyer* v. *Horn*, 1 Fed. Rep. 24; *Sawyer Crystal Co.* v. *Hubbard*, 32 Fed. Rep. 388; *Moxie Nerve Food Co.* v. *Baumbach*, 32 Fed. Rep. 205; *Stearns* v. *Page*, 7 How. 819; *Beaubien* v. *Beaubien*, 23 How. 190; *Delaware & Hudson Canal Co.* v. *Clark*, 13 Wall. 311; *Manufacturing Co.* v. *Trainer*, 101 U. S. 51; *Singer Co.* v. *Stanage*, 6 Fed. Rep. 279; *Singer Co.* v. *Riley*, 11 Fed. Rep. 706; *Singer Co.* v. *Loog*, 8 App. Cas. 15; *Brill* v. *Singer Co.*, 41 Ohio St. 127; *Fairbanks* v. *Jacobus*, 14 Blatchford, 337; *Gally* v. *Colt's Co.*, 30 Fed. Rep. 118; *Lorillard* v. *Pride*, 28 Fed. Rep. 434.

*Mr. W. W. McFarland*, for appellee, cited: *Newman* v. *Alvord*, 51 N. Y. 189; *Caswell* v. *Davis*, 58 N. Y. 223; *Ainsworth* v. *Walmsley*, L. R. 1 Eq. 518, 524; *Singer Machine*

*Manufacturers* v. *Wilson*, 3 App. Cas. 376; *Coleman* v. *Crump*, 70 N. Y. 573; *Lee* v. *Haley*, L. R. 5 Ch. 155; *Brooklyn White Lead Co.* v. *Masury*, 25 Barb. 416.

MR. JUSTICE FIELD delivered the opinion of the court.

This was a suit in equity, brought by the Goodyear Rubber Company, a corporation created under the laws of New York, to restrain Goodyear's India Rubber Glove Manufacturing Company, a corporation created under the laws of Connecticut, and others, defendants below, from using the name of "Goodyear's Rubber Manufacturing Company," or any equivalent name in their business. The bill alleges that the plaintiff was organized as a corporation on the 20th of November, 1872, for the purpose of manufacturing and dealing in india rubber and gutta percha goods, under its corporate name, in the city of New York; that it engaged in business in that city, where it has three large warehouses, with branch houses in other cities; that since its organization it has continually used its corporate name on signs at its various places of business and factories; on its bill and letter heads; on its various articles of manufacture; and on its corporate seal in contracts and other business transactions; that by reason thereof it has become possessed of an exclusive right and title to its corporate name, which, from its inseparable connection with the business and goodwill of the company, has become of great value; and that its exclusive use is essential to the prosperity of the plaintiff.

The bill then sets forth that at the time of its organization there existed a corporation carrying on business in the city of New York under the name Goodyear's India Rubber Glove Manufacturing Company, and dealing in various articles of which india rubber formed a component part, its business being similar to that of the plaintiff; that prior to the organization of the plaintiff in November, 1872, that company conducted its business under its corporate name, using it on its business signs, on its letter and bill heads, on its seal, and in all contracts and business transactions; that after the creation and organization of the plaintiff that company began to call

itself Goodyear's Rubber Manufacturing Company, and, for the purpose of diverting to itself the business and good-will of the plaintiff, resorted to various devices and contrivances having for their object the imitation and appropriation to its use of the plaintiff's name; that among these devices was the representation of the words "India" and "Glove," sometimes in small letters and sometimes by initials, thereby constituting a name for practical purposes almost identical with the name of the plaintiff, producing much loss and inconvenience to plaintiff's business by causing a diversion of letters and telegrams addressed to it; that for the like purpose of taking from the plaintiff its customers and trade, and appropriating its good-will, that company, on or about the first of January, 1882, adopted for its principal sign the name "Goodyear's Rubber Mfg. Co." over the entrance to and in front of its warehouses; and that these devices deceive the public and divert business and customers from the plaintiff, by which it sustains, and, without the interference of this court, will in the future sustain, great loss and damage.

The bill also alleges that the defendants Allerton and Vermule, with other persons unknown to the plaintiff, pretend to be a corporation under the name of Goodyear's Rubber Manufacturing Company, and that they are the principal owners and managers of the business carried on under the name of Goodyear's India Rubber Glove Manufacturing Company, and of Goodyear's Rubber Manufacturing Company, and as such direct and control whatever is done under the names of both.

The several defendants appeared and filed answers to the bill. These allege in similar terms that the defendant, Goodyear's India Rubber Glove Manufacturing Company, was organized as a corporation under that name in Connecticut in 1847 for the purpose of manufacturing india rubber goods, and in 1849 obtained license for their manufacture under patents of Charles Goodyear, and continued in that business during the existence of those patents; that after their expiration and in 1865, and continuously since, it has manufactured and sold very largely all kinds and classes of india rubber

goods, treated according to the patents of Goodyear; that it has been for upwards of twenty years the most prominent corporation or association in the city of New York engaged in the manufacture of those goods, and has become known to the trade by abbreviated and generally used titles of "Goodyear's Rubber Manufacturing Company," or "Goodyear Rubber Company," or "The Goodyear's Company," and other similar titles abbreviated from its full corporate name; that the name of "Goodyear" in connection with the word "Company," or "Co.," or with similar brief letters or words indicating a company engaged in rubber manufacturing, has been its distinguishing characteristic; that by adoption of the name of Goodyear in connection with its business and acquiescence of the public therein, and general usage, that company acquired a valuable right and interest in it, and has exercised the same for upwards of twenty years; that its use has been recognized by the plaintiff and its predecessors in repeated business transactions; that a large part of its correspondence during this period has been under the abbreviated names of "Goodyear Rubber Company," "Goodyear's Rubber Manufacturing Company," or "Goodyear's Company," or other similar abbreviated title; that it registered a trade-mark in the name of Goodyear's Rubber Manufacturing Company, and for the purpose of protecting it filed a certificate of incorporation under that name in New York in March, 1873; and that its trustees and managers subsequently organized as a corporation under that name in Connecticut. The answers also allege that the organizers of the plaintiff company, prior to 1873, had done business only under the name of "Rubber Clothing Company," or as F. M. & W. A. Sheppard, or as Sheppard & Dudley; that about January 1st, 1873, for the purpose of injuring the defendant and appropriating its well-known name and good-will, and securing its business, they organized the plaintiff under the name of the Goodyear Rubber Company, against which the defendant protested; and that such action on the part of the plaintiff has caused a diversion of the business of the defendant and general interference with it.

As a separate defence the answers also set forth various transactions of the plaintiff, which tended to show unfair and inequitable measures to divert to itself business from the defendant, Goodyear's India Rubber Glove Manufacturing Company, but it is not deemed important to state them. That company also filed a cross-bill to restrain the conduct of the plaintiff in that respect, and praying that damages might be decreed against it for its wrongful and inequitable acts. Replications having been filed to the several answers, proofs were taken, upon which the court below rendered a decree in favor of the plaintiff, perpetually enjoining the defendants from using or in any way employing the name Goodyear's Rubber Manufacturing Company, or the name Goodyear Rubber Company, or any abbreviation thereof representing such integral name in their business, upon their signs, bills of merchandise, receipts, letters, products of their manufacture, or otherwise; and directing that the cross-bill be dismissed. From the whole of that decree an appeal was taken to this court.

The proofs in the case show very clearly that Goodyear's India Rubber Glove Manufacturing Company had, as alleged in its answer, been for many years in the use of abbreviations in the designation of its company, using sometimes a name similar to the corporate name of the plaintiff; and if any exclusive right to the abbreviated name were to follow from its protracted use, that right would seem to belong to that company rather than to the plaintiff. But the name of "Goodyear Rubber Company" is not one capable of exclusive appropriation. "Goodyear Rubber" are terms descriptive of well-known classes of goods produced by the process known as Goodyear's invention. Names which are thus descriptive of a class of goods cannot be exclusively appropriated by any one. The addition of the word "Company" only indicates that parties have formed an association or partnership to deal in such goods, either to produce or to sell them. Thus parties united to produce or sell wine, or to raise cotton or grain, might style themselves Wine Company, Cotton Company, or Grain Company; but by such description they would in no

respect impair the equal right of others engaged in similar business to use similar designations, for the obvious reason that all persons have a right to deal in such articles, and to publish the fact to the world. Names of such articles cannot be adopted as trade-marks, and be thereby appropriated to the exclusive right of any one ; nor will the incorporation of a company in the name of an article of commerce, without other specification, create any exclusive right to the use of the name.

In *Canal Company* v. *Clark*, 13 Wall. 311, 323, 324, an attempt was made to appropriate the term "Lackawanna" to coal brought by the canal company from Lackawanna Valley in Pennsylvania. The coal sold by the defendant Clark was a different kind, but was brought from the same valley ; and he designated it also as Lackawanna coal. To enjoin this use of the name the suit was brought. The court held that geographical names designating districts of country could not be thus appropriated exclusively, as they pointed only to the place of production, and not to the producer. "Could such phrases," said the court, "as 'Pennsylvania wheat,' 'Kentucky hemp,' 'Virginia tobacco,' or 'Sea Island cotton' be protected as trade-marks; could any one prevent all others from using them, or from selling articles produced in the districts they describe under those appellations, it would greatly embarrass trade and secure exclusive rights to individuals in that which is the common right of many." In reaching this conclusion the court considered the principles upon which the owner of a trade-mark is protected in its use, and held, that "the trade-mark must, either by itself or by association, point distinctively to the origin or ownership of the article to which it is applied. The reason of this is, that unless it does, neither can he who first adopted it be injured by any appropriation or imitation of it by others, nor can the public be deceived." And again : "No one can claim protection for the exclusive use of a trade-mark or trade-name which would practically give him a monopoly in the sale of any goods other than those produced or made by himself. If he could, the public would be injured rather than protected, for competition would be destroyed. Nor can a generic name, or a name merely de-

scriptive of an article of trade, of its qualities, ingredients, or characteristics, be employed as a trade-mark and the exclusive use of it be entitled to legal protection."

To the same purport is the decision in *Manufacturing Company v. Trainer*, 101 U. S. 51. There the court said : " The object of the trade-mark is to indicate, either by its own meaning or by association, the origin or ownership of the article to which it is applied. If it did not, it would serve no useful purpose, either to the manufacturer or to the public ; it would afford no protection to either against the sale of a spurious in place of the genuine article." See also *Amoskeag Manufacturing Co. v. Spear*, 2 Sandford (N. Y.) 599; *Falkinburg v. Lucy*, 35 California, 52; *Choyniski v. Cohen*, 39 California, 501; *Raggett v. Findlater*, L. R. 17 Eq. 29.

The designation Goodyear Rubber Company not being subject to exclusive appropriation, any use of terms of similar import, or any abbreviation of them, must be alike free to all persons.

The case at bar cannot be sustained as one to restrain unfair trade. . Relief in such cases is granted only where the defendant, by his marks, signs, labels, or in other ways, represents to the public that the goods sold by him are those manufactured or produced by the plaintiff, thus palming off his goods for those of a different manufacture, to the injury of the plaintiff. *McLean v. Fleming*, 96 U. S. 245; *Sawyer v. Horn*, 4 Hughes, 239; *Perry v. Truefitt*, 6 Beavan, 66; *Croft v. Day*, 7 Beavan, 84. There is no proof of any attempt of the defendant to represent the goods manufactured and sold by it as those manufactured and sold by the plaintiff; but, on the contrary, the record shows a persistent effort on its part to call the attention of the public to its own manufactured goods, and the places where they are to be had, and that it had no connection with the plaintiff.

It follows that

*The decree of the Circuit Court as to the original bill must be reversed, and the cause remanded, with instructions to dismiss that bill, with costs. No case was made out for relief to the plaintiff in the cross-bill. The costs of the appeal are awarded to the appellants.*