PUTNAM NAIL CO. v. AUSABLE HORSENAIL CO.

(Circuit Court, S. D. New York. January 2, 1893.)

TRADE-NAMES—INFRINGEMENT—"HAMMER-POINTED" HORSENAILS.
    Complainant alleged that by virtue of certain patents it had the exclusive right to manufacture "hot-forged and hammer-pointed" horsenails in imitation of the old hand process, and that defendant, with intent to cheat and defraud it, has advertised its nails as "hot forged and hammer pointed," when in truth they are neither, and that in this way defendant has palmed off its goods for those of complainant. It appeared that complainant's nails are made by a machine which subjects the nail to quick, percussive blows of two pairs of dies, operating alternately upon the entire length of the nail; and that defendant uses a revolving hammer which acts upon the metal by progressive blows, drawing it out from head to point, a bevel being formed near the point by a stroke of the hammer, and the surplus metal being then clipped off with shears; and that a similar process of forming the point was called "pointing by hammer" long before complainant's use of the expression in controversy. *Held* that,

strictly speaking, neither nail is "hammer pointed," and that in the absence of any proof that defendant actually tried to deceive the public, or that any purchasers were actually deceived, no recovery could be had.

In Equity. Suit by the Putnam Nail Company against the Ausable Horsenail Company for infringement of a trade name. Decree dismissing the bill.

Frederick P. Bellamy, for complainant.
Livingston Gifford, for defendant.

COXE, District Judge. The complainant and defendant are rival manufacturers of horsenails. The complainant alleges that by virtue of certain patents it has the exclusive right to manufacture "hot-forged and hammer-pointed" horsenails in imitation of the old hand process; that the defendant, with intent to cheat and defraud the complainant, has advertised its nails as "hot-forged and hammer-pointed," when in truth they were neither; that in this way the defendant has deceived the public and palmed off its goods for those of the complainant. The defenses are that the words in controversy are not trade-marks, but are truly descriptive of defendant's nails, and were used by the defendant before they were used by the complainant; that defendant's advertisements have caused no damage to the complainant, but the latter has slandered and misrepresented the defendant and injured its sales; and that the complainant, for this reason, does not come into court with clean hands.

An attempt is made in the record to hold the defendant liable for several statements made regarding its manufactures. All of these, but one, were effectually disposed of at the argument, and the controversy was narrowed down to the single question: Has the defendant trespassed upon the complainant's rights by saying that its nails were "hammer-pointed?" The court understands that it was conceded, in reply to a question by the court, that the defendant had a right to use all of the other statements complained of, but if not conceded, it was overwhelmingly proved, and the examination will, therefore, be confined to the single proposition above stated. Strictly speaking, neither the nails of the complainant nor the defendant are "hammer-pointed." They are not made in the same manner as the old hand-made nails. The complainant uses a machine by which the nail is subjected to the quick, percussive blows of two pairs of dies, or hammers, operating alternately upon the entire length of the nail. The nail is formed and pointed by this method, and does not require the removal of superfluous metal by clipping or shearing. The defendant uses a revolving hammer, which acts upon the metal by a series of progressive blows, drawing it out from head to point. A bevel is formed near the end of the nail by the stroke of a hammer or beveling die; the surplus metal is then clipped off and the nail is finished. Which of these two methods more nearly resembles the old-fashioned way of forming the nail by placing the metal on an anvil, and subjecting it to the blows of the blacksmith's hammer, is in dispute. Certainly the defendant's process shows as many points of analogy as the complainant's. There could be no possible

criticism of the defendant's acts were it not for the fact that it shears off the superfluous metal at the point. So that the question may be still further narrowed as follows: Is the defendant guilty of fraud and falsehood in describing nails which are shaped throughout and beveled at the point by hammering, as "hammer-pointed," because the final operation in forming the point consists in cutting off the surplus metal? It is thought not, for the reason that the description is true. A similar process was called "pointing by hammer" long prior to the use by complainant of the expression in controversy. The defendant's description may not contain the whole truth, but there is nothing fraudulent about it. For a condensed statement of the defendant's process it is as near accuracy as such statements usually are. Certainly it is as near as many of the complainant's rose-colored recommendations of its nails. On reading some of complainant's advertisements one would be justified in the conclusion that its nails are incomparably the best in the world, and that the defendant's nails are so liable to split and sliver in the hoof that many of the ills which horseflesh is heir to can be directly traced to their baleful influence. The defendant could have said that its nails were "hot-forged and cold-pointed" with perfect propriety, but it is argued that the substitution of the expression "hammer-pointed" for "cold-pointed" leaves the defendant open to the charge of fraud. It is clear that equity cannot deal with such technical and unsubstantial complaints. It might, perhaps, have been fairer and more accurate if the defendant had said that its nails were "hot-forged, hammer and shear pointed," or "hot-forged and pointed by hammering and shearing." The court, however, cannot compel such nicety or fullness of expression or go into the business of arranging the language in which merchants shall place their goods upon the market. An absolutely false statement may, in certain circumstances, be restrained, but it is beyond the power of a court of equity to compel commercial men to tell all that they know about their goods. There is not the slightest proof that the defendant has tried to deceive the public or palm off its goods as those of the complainant. The proof that purchasers were ever actually deceived by the defendant's use of the words "hammer-pointed," is wholly inadequate. If the constant reiteration of its position by the complainant in the cloud of advertisements and circulars which it has put forth could enlighten the public and inform purchasers, there was little chance for them to go astray. In the complainant's brief these advertisements are alluded to as producing a "universal impression." The defendant's nails speak for themselves; they show the shear marks on the sides. All buyers could see these marks, and if in their judgment the shearing was detrimental they would not have bought the nails. They purchased with their eyes wide open in this respect.

The defendant's advertisements, trade-marks, labels, and brands are totally different from complainant's, and strongly negative the idea that any imposition was attempted or thought of. The defendant has advertised its nails upon their own merits, believing them to be the best nails manufactured. There has been no deception, no

concealment no false pretenses. These nails have entered the market as the "Ausable nails," and what reputation they have gained has been under their own name and upon their own merits. The statement is repeatedly made in the complainant's brief that the complainant has the exclusive right to manufacture hot-forged and hammer-pointed horseshoe nails in imitation of the old hand process. I do not find the proof of this, especially in view of the admitted fact that the defendant formerly made such nails under a patent which has now expired, and is, therefore, free to all, and the other fact that the defendant used the words "hammer-pointed" long before the complainant used them, and has so used these words to describe its nails continuously since 1872. Assuming, as of course we must, that complainant's patent is valid, complainant has the exclusive right to make nails under that patent. But a patentee cannot prevent hammering because he has invented a new hammer. There is nothing to prevent the defendant or any other manufacturer from making hot-forged or hammer-pointed nails so long as they do not infringe the complainant's patent. That such nails have been made and are being made without such infringement is abundantly proved. They were made by the defendant before they were made by the complainant.

I have examined the comprehensive and carefully prepared digest of decisions in the defendant's brief, but the foregoing conclusions upon the facts render it unnecessary to refer to these authorities in detail. The law is succinctly stated by Mr. Justice Field as follows:

"The case at bar cannot be sustained as one to restrain unfair trade. Relief in such cases is granted only where the defendant, by his marks, signs, labels, or in other ways, represents to the public that the goods sold by him are those manufactured or produced by the plaintiff, thus palming off his goods for those of a different manufacture, to the injury of the plaintiff." Goodyear's India Rubber Glove Manuf'g Co. v. Goodyear Rubber Co., 128 U. S. 598, 9 Sup. Ct. Rep. 166.

I am of the opinion that the defendant is not within the rule above stated; that it has not been guilty of fraud or falsehood and that it has not palmed off its goods as those of the complainant or attempted to do so. Trade should, as far as possible, be left untrammeled. It is already so hampered by patents, trade-marks, copyrights, labels, and other necessary impediments that the most careful and conscientious merchant never feels entirely safe from attack. It should not be vexed still further by inconsiderate judicial meddling. Parties ought not to be encouraged in running to the courts with every petty quarrel over the language used by a rival in advertising. Such language always deals in hyperbole. The public clearly understands this and gives to such exaggerations their due weight. In controversies like the present it is much wiser to leave the decision to the sure and just arbitrament of public opinion. No man who unfairly describes his goods can long succeed. He cannot advertise one article and sell another and an inferior article without being detected. The public will surely find him out. Confidence in the man is gone, and loss of business is sure to follow. This record shows that both parties were ascribing to their own manufactures

unusual and peculiar merits, but I cannot think that in this competition the defendant has been guilty of fraudulent and dishonest practices. The bill is dismissed.