## NO–D–KA DENTIFRICE CO. v. S. S. KRESGE CO.

District Court, D. Massachusetts. February 29, 1928.

No. 2868.

1. Trade-marks and trade-names and unfair competition ⬤⟳84—Defendant held not entitled to dismissal of bill for infringement on ground of unusual hardship to produce evidence.

Bill against corporation for infringement of trade-mark and unfair competition will not be dismissed on the ground that for the hearing it will be necessary for defendant to bring from another state its general books of record, covering the business of more than 200 retail stores, where it does not appear that all pertinent entries may not be shown by depositions taken where the records are kept.

2. Trade-marks and trade-names and unfair competition ⬤⟳3(4½)—"No–D–Ka," as applied to a tooth paste, held descriptive, and not subject to appropriation as trade-mark.

The word "No–D–Ka," as applied to a tooth paste, is merely a misspelling of the words "no decay," intended as descriptive of the properties or effect of the article, and is not subject to appropriation as a technical trade-mark.

In Equity. Suit by the No-D-Ka Dentifrice Company against the S. S. Kresge Company. On defenses in law, set up by answer. First defense overruled, and second defense sustained, and part of bill stricken out.

Richard J. Talbot, of Springfield, Mass., for plaintiff.

J. Colby Bassett, Melville Fuller Weston, and Powers & Hall, all of Boston, Mass., for defendant.

BREWSTER, Circuit Judge. This cause was originally brought in the state court and was removed to this court by the defendant.

The plaintiff in its bill of complaint alleges infringement of a registered trade-mark and also unfair competition.

The defendant in its answer has set up two defenses, which it asks the court to dispose of before final hearing on the merits. Equity rule No. 29.

[1] The first of these defenses is in the nature of a motion to dismiss, and is based upon an apprehension that, if the defendant is compelled to go to trial in this district, inconvenience and hardship will result, and the business of the defendant will be interfered with to such an extent that the court would be quite justified in declining to retain jurisdiction of the suit.

In support of this defense it has filed affidavits, from which it appears that the defendant is a Michigan corporation, carrying

on a retail merchandising business in 23 different states and with over 200 stores. Some of these stores are within Massachusetts, and some are not. Each of these stores is concerned with and has records of only its own transactions. There are no branch or division offices, in Massachusetts or elsewhere. The only accounts and records, wherein are gathered the materials from which the defendant can render any accounts with respect to the sales of the articles involved, are kept at its home office in Detroit, Mich. These are general books, records, and files of the corporation. They are not separate sets of books, kept with respect to the defendant's dealings in separate articles, but they are the records of what is done in all of its stores, handling an innumerable variety of merchandise. They are necessary for the carrying on of its business day by day. The entries which relate to the separate articles could not be physically separated from the whole record of which they are a part, and it is suggested that to bring into this jurisdiction all of the original material needed for a full examination of the defendant's records would involve bringing on here, for indefinite periods of time, a vast amount of material not material to the case, but necessary to the conduct of the defendant's business at its home office.

I quite agree with the defendant's counsel that, if it were necessary to bring all of these accounts and records into this jurisdiction, it would interfere with the affairs of the corporation to such an extent that it would be difficult to justify the procedure; but I am not persuaded that such a course is at all necessary in order to present to the court such evidence as either party may desire to offer. Depositions may be taken, where the parties cannot stipulate. In fact, plaintiff's counsel has stated that he had no intention of applying to this court for any order or process requiring the defendant to produce here its general books and records. He has expressed his willingness to attend the taking of depositions at Detroit, Mich. I am confident that no judge of this court would issue an order that would unduly harrass the defendant, or unnecessarily interfere with its business operations. I see nothing in the situation calling for the exercise of the discretion, if it has the extraordinary discretionary power to dismiss out of court a suit properly brought in the state court, and properly removed by the defendant to this court. So far, then, as defendant's answer asks for dismissal of the bill, it is overruled.

[2] The second defense raises a point of law upon the allegations of the bill, which goes to a part only of the cause of action stated therein. This defense brings into question the validity of the plaintiff's registered trade-mark as a technical trade-mark, and is raised by what is equivalent to a motion to strike out from the bill so much of it as relates exclusively to the plaintiff's claim to such technical trade-mark, and sets up the same as a basis for relief.

The bill alleges that the plaintiff is the owner by assignment of the trade-mark "No–D–Ka," registered in the United States Patent Office May 11, 1925; that this trademark is used by the plaintiff in the manufacture and sale, both at wholesale and retail, of a tooth paste, or dentifrice, for the cleaning of teeth; and that the defendant sells a tooth paste under the trade-name of "Nodeca."

The defendant contends that upon the face of the bill the plaintiff has no valid trade-mark, and can have none, in the words "No–D–Ka," as applied to a tooth paste; the words plainly being merely an abbreviation and phonetic way of spelling "no decay." It invokes the familiar rule of the law of trade-mark that a monopoly cannot be acquired in the use of words which are merely descriptive of the character, properties, qualities, or composition of an article. Amoskeag Mfg. Co. v. Trainer, 101 U. S. 51, 25 L. Ed. 993; Goodyear Indian Rubber Glove Mfg. Co. v. Goodyear Rubber Co., 128 U. S. 598, 9 S. Ct. 166, 32 L. Ed. 535; Brown Chemical Co. v. Meyer, 139 U. S. 540, 11 S. Ct. 625, 35 L. Ed. 247; Warner & Co. v. Lilly & Co., 265 U. S. 526, 44 S. Ct. 615, 68 L. Ed. 1161.

Words which indicate in a general way the uses to which the article can be put, or the advantages resulting from its use, have been in several cases held to come within the rule. The following are illustrative: "Roof Leak," as applied to roof paint, Elliott Varnish Co. v. Sears, Roebuck & Co. (C. C. A.) 232 F. 588; "Drydip," as applied to a powder for exterminating vermin, Ungles-Hoggette Mfg. Co. v. Farmers' Hog & Cattle Powder Co. (C. C. A.) 232 F. 116; "Slo-Flo," as applied to lubricating oil, In re Swan & Finch Co., 49 App. D. C. 95, 259 F. 991; "Lather Kreem," as applied to shaving compound, A. J. Krank Mfg. Co. v. Pabst (C. C. A.) 277 F. 15; "Stabrite," as applied to a polish, In re Charles R. Long, Jr., Co., 51 App. D. C. 399, 280 F. 975; "Dyanshine," as applied to shoe polish, Barton v. Rex-Oil Co. (C. C. A.) 2 F.(2d) 402, 40 A. L. R. 424; "Mirrolike," as applied to polish,

Mirrolike Mfg. Co. v. Devoe & Raynolds Co., Inc. (C. C. A.) 3 F.(2d) 847; "Wornova," as applied to garments, Wornova Mfg. Co. v. McCawley & Co. (C. C. A.) 11 F.(2d) 465; "Kant-Leek," as applied to water bottles, In re Seamless Rubber Co., 34 App. D. C. 357.

On the other hand, it is possible to find in the books cases in which words somewhat remotely indicating the use or effect of the articles have been held suggestive rather than descriptive and not to fall within the rule. The following are examples: "Anti-Washboard," as applied to soap, O'Rourke v. Central City Soap Co. (C. C.) 26 F. 576; "Baco-Curo," as applied to medicine, Sterling Remedy Co. v. Eureka Chemical & Mfg. Co. (C. C. A.) 80 F. 105; "Cuticura," as applied to soap, Potter Drug & Chemical Co. v. Pasfield Soap Co. (C. C.) 102 F. 490; "Cottolene," as applied to a substitute for lard, N. K. Fairbank Co. v. Central Lard Co. (C. C.) 64 F. 133.

However, the great weight of authority, as expressed in the later decisions, supports the general proposition that words descriptive of use and advantages are not proper subjects for technical trade-mark.

Plaintiff's cause, so far as it involves possible infringement, is based upon an asserted exclusive right to the use, when applied to tooth paste, not only of the mark "No–D–Ka," but of the words "No decay," or any combination of letters which, if pronounced, sounds like the words "No decay." Plaintiff cannot complain that the defendant's "No-deca" makes the same impression upon the eye as plaintiff's combination "No–D–Ka." It is the similarity of the words when spoken that enables the plaintiff to claim an infringement. United Lace & Braid Mfg. Co. v. Barthels Mfg. Co. (D. C.) 221 F. 456. To quote from the brief of the defendant's counsel: "In a tongue characterized by many arbitrary differences of spelling, the ultimate reality of a word lies largely in its sound." "The appearance of a word tells but half, and often less than half, the story."

A sufficient reason is here suggested for holding, as the courts have quite generally held, that a misspelled word, or a combination of misspelled words, will not be saved, if the word or words, correctly spelled, are obnoxious to the rule. Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U. S. 446, 31 S. Ct. 456, 55 L. Ed. 536. Many of the cases cited earlier in this opinion clearly support this proposition.

This brings us, therefore, to a somewhat narrow question: Are the words "no decay," when used in connection with the manufacture or sale of a paste or dentifrice used for cleaning teeth, so far descriptive of the properties, characteristics, use, or advantageous effects of the article, as to bring the word within the inhibition of the rules above stated? The words "no decay" clearly describe the effect which comes from use of the tooth paste, and this is but a negative way of stating that the properties of the paste will preserve the teeth. After careful consideration of the many cases cited by both the plaintiff and the defendant, I have little difficulty in reaching the conclusion that the words are descriptive, and cannot be claimed as a proper subject for technical trade-mark.

I am impressed by an observation made by Fry, L. J., in Eastman Photographic Co., Ltd., v. Controller General of Patents [1898] A. C. 571, 583, that "there is a perpetual struggle going on to inclose and appropriate as private property certain little strips of the great open common of the English language; that," he added "is a kind of trespass against which I think the courts ought to set their faces." Compare, also, two opinions of Judge Learned Hand in Franklin Knitting Mills, Inc., v. Fashionit Sweater Mills, Inc. (D. C.) 297 F. 247, and in Oakland Chemical Co. v. Bookman (C. C. A.) 22 F.(2d) 930.

Whether the plaintiff is entitled to relief on grounds of unfair competition is a question not now before the court. The defense which I have considered goes only to so much of the plaintiff's bill as is predicated upon the existence of a valid trade-mark in the strict common-law sense, as distinguished from the trade-name.

I sustain the defense, and I dismiss that portion of plaintiff's bill which exclusively relates to defendant's claim of said alleged trade-mark, and sets up the same as a basis for relief, which portion is more particularly set forth in paragraph 2 (f) of defendant's answer.