THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: June 20, 2019

**UNITED STATES PATENT AND TRADEMARK OFFICE**

‾‾‾‾

**Trademark Trial and Appeal Board**

‾‾‾‾

*In re Katch, LLC*

‾‾‾‾

Serial No. 86301765

‾‾‾‾

Katch, LLC, *pro se*.[1]

Susan A. Richards, Trademark Examining Attorney, Law Office 103,
    Stacy Wahlberg, Managing Attorney.

‾‾‾‾

Before Cataldo, Adlin and Hightower, Administrative Trademark Judges.

Opinion by Cataldo, Administrative Trademark Judge:

  Katch, LLC (Applicant) seeks registration on the Supplemental Register of the term

HEALTHPLANS.COM, in standard characters, for the following services, as

amended:

> Advertising services, namely, cost-per-action on-line
> advertising; Advertising services, namely, promoting and
> marketing the goods and services of others in the field of
> health, life, and Medicare insurance via print and
> electronic media; Insurance lead collection and matching
> services, namely, matching consumer requests for
> insurance policy quotes collected over the Internet to pre-

---

[1] Applicant's counsel filed a request to withdraw in the Trademark Application Examination System (TEAS) on February 21, 2018, after the time for briefing of the appeal had closed. The request to withdraw was granted the same day.

> qualified insurance brokers, agents and agencies interested in those requests; Providing demand creation and lead generation activities and services to insurance carriers, and health, life, and Medicare insurance advertisers in International Class 35; and
>
> Providing temporary use of on-line non-downloadable software and applications for facilitating the tracking, administration, billing, and reporting of advertising via an on-line communications network in International Class 42.[2]

The Trademark Examining Attorney finally refused registration of the proposed mark: (1) on the Principal Register under Trademark Act Sections 1, 2, 3 and 45, 15 U.S.C. §§ 1051, 1052, 1053 and 1127, on the ground that Applicant's proposed mark is highly descriptive and that the claim of acquired distinctiveness under Trademark Act Section 2(f), 15 U.S.C. § 1052(f), is insufficient to establish that HEALTHPLANS.COM has acquired distinctiveness; and, in the alternative, (2) on the Supplemental Register under Section 23(c) of the Trademark Act, 15 U.S.C. § 1091(c), on the ground that Applicant's proposed mark is a generic term for the identified services in International Classes 35 and 42, and thus incapable of distinguishing them. After the refusals became final, Applicant appealed and filed a request for reconsideration which was denied. After the appeal resumed, Applicant and the Examining Attorney filed briefs.

---

[2] Vantage Media LLC filed application Serial No. 86301765 on June 5, 2014, seeking registration on the Principal Register based on its allegation of use of the proposed mark anywhere and in commerce as of October 8, 2012 as to both classes of services under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a). Applicant recorded a change of name to Katch, LLC on February 16, 2015 with the Assignment Recordation Branch of the USPTO at Reel 5495, Frame 0365, and recorded a further corrective assignment on December 8, 2015 at Reel 5684, Frame 0336. Applicant amended the application on September 12, 2016 to seek registration, in the alternative, on the Supplemental Register.

## I.    Refusal of registration under Trademark Act Sections 1, 2, 3 and 45

Applicant presents no arguments that HEALTHPLANS.COM is registrable as inherently distinctive on the Principal Register or that its proposed mark is not inherently distinctive but has acquired distinctiveness under Section 2(f). Applicant restricts its argument to traversing the refusal under Section 23(c), asserting that its applied-for mark is not generic but rather "capable of distinguishing the applicant's services, and is thus registrable on the Supplemental Register." 9 TTABVUE 9. In her appeal brief, the Examining Attorney argues that Applicant has not appealed the refusal of registration under Trademark Act Sections 1, 2, 3 and 45. Applicant did not file a reply brief.

We find that Applicant has waived its appeal of the Examining Attorney's refusal of registration on the Principal Register under Trademark Act Sections 1, 2, 3 and 45, 15 U.S.C. §§ 1051, 1052, 1053 and 1127. *In re Harley*, 119 USPQ2d 1755, 1758 (TTAB 2016) (Applicants' failure to address any of the grounds for refusal is a basis for affirming the examining attorney's refusal on all grounds); TBMP § 1203.02(g) (2018) ("If an applicant, in its appeal brief, does not assert an argument made during prosecution, it may be deemed waived by the Board.").

Accordingly, the Examining Attorney's refusal of registration of the proposed mark on the Principal Register under Trademark Act Sections 1, 2, 3 and 45 as being not inherently distinctive and for failure to show acquired distinctiveness, is affirmed.

In view of Applicant's arguments against the substantive issue of genericness, Applicant's waiver of the appeal under Sections 1, 2, 3 and 45 does not encompass the substantive issue of whether Applicant's applied-for mark is generic.

## II. Refusal of registration on the Supplemental Register under Trademark Act Section 23(c)

"In order to qualify for registration on the Supplemental Register, a proposed mark 'must be capable of distinguishing the applicant's goods or services.'" *In re Emergency Alert Sols. Grp., LLC*, 122 USPQ2d 1088, 1089 (TTAB 2017) (quoting 15 U.S.C. § 1091(c)). Generic terms do not qualify for registration because "by definition [they] are incapable of indicating a unique source." *In re La. Fish Fry Prods., Ltd.*, 797 F.3d 1332, 116 USPQ2d 1262, 1267 (Fed. Cir. 2015) (citing *In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 828 F.2d 1567, 4 USPQ2d 1141, 1142 (Fed. Cir. 1987) ("Generic terms, by definition incapable of indicating source, are the antitheses of trademarks, and can never attain trademark status.")); *see also Clairol, Inc. v. Roux Distrib. Co.*, 280 F.2d 863, 126 USPQ 397, 398 (CCPA 1960) ("The generic name by which a product is known is not a mark which can be registered on the Supplemental Register under [S]ection 23 because such a name is incapable of distinguishing applicant's goods from goods of the same name manufactured or sold by others.").

### A. Genericness legal standards

A generic term "is the common descriptive name of a class of goods or services." *Royal Crown Co. v. Coca-Cola Co.*, 892 F.3d 1358, 127 USPQ2d 1041, 1045 (Fed. Cir. 2018) (quoting *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 228 USPQ 528, 530 (Fed. Cir. 1986)). When a proposed mark is refused

4

registration as generic, the examining attorney has the burden of proving genericness by clear evidence. *In re Cordua Rests., Inc.*, 823 F.3d 594, 118 USPQ2d 1632, 1635 (Fed. Cir. 2016); *see also In re Hotels.com LP*, 573 F.3d 1300, 91 USPQ2d 1532, 1533 (Fed. Cir. 2009) (USPTO "must demonstrate generic status by clear evidence"). "The critical issue in genericness cases is whether members of the relevant public primarily use or understand the term … to refer to the genus of goods or services in question." *Royal Crown*, 127 USPQ2d at 1046 (quoting *Marvin Ginn*, 228 USPQ at 530).

The Federal Circuit has set forth a two-step inquiry to determine whether a mark is generic: First, what is the genus (category or class) of goods or services at issue? Second, is the term sought to be registered understood by the relevant public primarily to refer to that genus of goods or services? *Marvin Ginn*, 228 USPQ at 530. The relevant public's perception is the chief consideration in determining whether a term is generic. *See Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 114 USPQ2d 1827, 1833 (Fed. Cir. 2015). Evidence of the public's understanding of a term may be obtained from "any competent source, such as consumer surveys, dictionaries, newspapers and other publications." *Id.* at 1830 (quoting *In re Northland Aluminum Prods., Inc.*, 777 F.2d 1556, 227 USPQ 961, 963 (Fed. Cir. 1985)). "[A] term can be generic for a genus of goods or services if the relevant public … understands the term to refer to a key aspect of that genus." *Royal Crown*, 127 USPQ2d at 1046 (quoting *Cordua*, 118 USPQ2d at 1637); *see also In re 1800Mattress.com IP LLC*, 586 F.3d 1359, 92 USPQ2d 1682, 1685 (Fed. Cir. 2009)

5

(affirming Board's reasoning that MATTRESS.COM is generic because "'[c]onsumers would see MATTRESS.COM and would immediately recognize it as a term that denotes a commercial website rendering retail services featuring mattresses'"); *In re Hotels.com, L.P.*, 573 F.3d 1300, 1304, 91 USPQ2d 1532, 1535 (Fed. Cir. 2009) (affirming that HOTELS.COM is generic, reasoning that "the generic term 'hotels' did not lose its generic character by placement in the domain name HOTELS.COM," where hotels were the focus of and named a key aspect of the information and reservation services provided on the website); *In re Reed Elsevier Properties Inc.*, 482 F.3d 1376, 1379, 82 USPQ2d 1378, 1380 (Fed. Cir. 2007) (affirming that LAWYERS.COM is generic where lawyers were an "integral, if not the paramount, aspect" of the information services provided on the website).

With respect to the first part of the *Marvin Ginn* inquiry, the genus may be defined by the services identified in the application. *See Reed Elsevier*, 82 USPQ2d at 1380; *Magic Wand Inc. v. RDB Inc.*, 940 F.2d 638, 19 USPQ2d 1551, 1552 (Fed. Cir. 1991) (a proper genericness inquiry focuses on the identification set forth in the application or certificate of registration). Thus, we define the genus based on the identification of services for each class. The identified services in both classes encompass services provided in the field of health insurance. *Cordua*, 118 USPQ2d at 1636. Additionally, for Class 35, the identification of services, and thus the genus, includes "Insurance lead collection and matching services, namely, matching consumer requests for insurance policy quotes collected over the Internet to pre-qualified insurance brokers, agents and agencies interested in those requests." The record confirms that Applicant's

6

services are in the field of health insurance. For example, screenshots from Applicant's website, discussed *infra*, indicate that health plans are an integral aspect of Applicant's services[3] In *DNI Holdings*, 77 USPQ2d 1435 (TTAB 2005), involving the designation SPORTSBETTING.COM, this tribunal found that despite the applicant's omission from its recitation of services terms related to sports wagering apparently to avoid a finding of genericness, "the relevant genus of services herein includes wagering on sporting events." *Id*. at 1439. The Board further observed:

> Even if we are constrained to ignore the realities of use actually made by applicant because applicant has purposely drafted a description omitting that use, this does not end the first part of the *Marvin Ginn* inquiry into possible genericness. Applicant's recitation of services includes the providing of a website "featuring information in the fields of gaming, athletic competition and entertainment." That is, even if for purposes of this inquiry, we were to ignore applicant's clear offering on its website of "sports betting services," we nonetheless find that the class or category of services described in the application still clearly includes that of providing information regarding sports and betting.

*Id*. *See also See Reed Elsevier*, 82 USPQ2d at 1380 (affirming this tribunal's finding that applicant's provision of information regarding the law, legal news and legal services necessarily includes providing information about lawyers notwithstanding applicant's deletion of those services from its recitation.).

The second part of the *Marvin Ginn* inquiry requires us to consider whether the term sought to be registered is understood by the relevant public primarily to refer to that genus of services. The relevant public is the purchasing public for

---

[3] September 26, 2014 First Office Action at .pdf 10-17. Citations to the examination record are to the downloadable .pdf files from the Trademark Search and Document Retrieval (TSDR) database.

the identified services. *Sheetz of Del., Inc. v. Doctor's Assocs. Inc.*, 108 USPQ2d 1341, 1351 (TTAB 2013).

### B. Applicant's services and relevant consumers

Applicant's services are identified in the application as follows:

> Advertising services, namely, cost-per-action on-line advertising; Advertising services, namely, promoting and marketing the goods and services of others in the field of health, life, and Medicare insurance via print and electronic media; Insurance lead collection and matching services, namely, matching consumer requests for insurance policy quotes collected over the Internet to pre-qualified insurance brokers, agents and agencies interested in those requests; Providing demand creation and lead generation activities and services to insurance carriers, and health, life, and Medicare insurance advertisers in International Class 35; and

> Providing temporary use of on-line non-downloadable software and applications for facilitating the tracking, administration, billing, and reporting of advertising via an on-line communications network in International Class 42.

With respect to the Class 35 services, screenshots from Applicant's website clearly indicate that Applicant's "insurance lead collection and matching services, namely, matching consumer requests for insurance policy quotes collected over the internet to pre-qualified insurance brokers, agents and agencies," requires the input of information from the general public as well as insurers for purposes of matching consumer health insurance needs with available health insurance options. Representative screen shots are reproduced as Figure 1 below:[4]

**Figure 1.**

---

[4] September 26, 2014 First Office Action at .pdf 10-17.

http://www.healthplans.com/happens-health-plans-compete/     09/22/2014 08:21:13 PM



http://www.healthplans.com/     09/22/2014 08:20:34 PM



## Comprehensive Information

HealthPlans.com provides all the information you need to make an informed decision about your health insurance plan. And we put it all in simple, easy-to-understand terms.

## Shop & Compare Plans

Once you're ready to shop plans, we can match you with top carriers. Just answer some questions about yourself to get started.

## Nationwide Network

Health insurance plans aren't one size fits all. That's why we are proud of our nationwide network of carriers. After all, more carriers mean more options for you.

## Find the Right Health Plan for You

Select the type of insurance you want to learn more about.

Applicant's website indicates that its services solicit input from individuals seeking health insurance to enable them to compare and shop for health insurance plans based upon their needs. In Class 35, Applicant provides advertisements, insurance lead collection and matching, demand creation and lead generation to health insurers based upon the information input onto its website by members of the public who seek health insurance. Applicant's "insurance lead collection and matching services, namely, matching consumer requests for insurance policy quotes collected over the internet to pre-qualified insurance brokers, agents and agencies interested in those requests" are provided both to insurers and to members of the general public seeking health insurance. The purpose of Applicant's Class 35 services appears to be to create business for health insurers and thus Applicant's services are directed toward health insurance providers trying to reach potential consumers. Nonetheless, Applicant also makes its matching services available to ordinary consumers interested in reviewing their health insurance options and ultimately obtaining health insurance. We find based upon the evidence cited above that the relevant consumers of Applicant's Class 35 services are health insurance providers as well as members of the general public who are seeking health insurance from health insurance providers.

However, with respect to the Class 42 services, there is no evidence in the record that Applicant's "providing temporary use of on-line non-downloadable software and applications for facilitating the tracking, administration, billing, and reporting of advertising via an on-line communications network" are directed toward the general public. The record does not indicate that members of the general public seeking

10

health insurance typically advertise. The Class 42 services on their face are directed toward insurers monitoring the advertising of their health insurance on Applicant's website, and possibly other websites, and there is nothing to suggest they are utilized by consumers seeking health insurance. We therefore find that the relevant consumers of Applicant's Class 42 services are health insurance providers, but not members of the general public seeking health insurance.

## C.  Consumer understanding of HEALTHPLANS.COM

In support of the genericness refusal, the Examining Attorney relies on the following dictionary definitions of the proposed mark's constituent and related terms as evidence of how consumers will understand the term "HEALTHPLANS":

> HEALTH PLAN - "Health benefits package, managed care, any plan or organized format for delivering health care services - e.g., HMO, indemnity, medigap, preferred provider organization, point-of-service plans;"[5]
>
> HEALTH PLAN – "Health plan can be used to mean a health maintenance organization (HMO), a health coverage plan provided by an employer to its employees, or a health coverage plan offered to employers by an insurer or third party administrator;"[6] and
>
> HEALTH CARE – "Services provided to individuals or communities by a health care system or by professionals to promote, maintain, monitor, or restore health. Health care contains a broad spectrum of services and activities delivered by a team of health personnel. This contrasts with medical care, which concentrates on diagnostic and therapeutic actions performed by or under the supervision of an individual physician."[7]

---

[5] September 26, 2014 first Office Action at .pdf 5-7. Medical-dictionary.thefreedictionary.com/health+plan.

[6] September 26, 2014 first Office Action at .pdf 8-9. cigna.com/glossary.

[7] August 6, 2015 final Office Action at 94-122. iime.org/glossary/htm#HMO.

She also relies on the screen shot of Applicant's website reproduced above as Figure 1, and on Applicant's original specimen of use, reproduced as Figure 2 below:

**Figure 2.**



Applicant and the Examining Attorney introduced into the record evidence of additional use of "health plan(s)" or "healthplans.com" by or concerning Applicant. The following examples are illustrative.[8]

> LOS ANGELES--(BUSINESS WIRE)--**HealthPlans.com**, one of the most visited independent consumer Health Insurance sites, according to comScore, today unveiled a redesigned website with new tools and

---

[8] Applicant's July 14, 2015 Response to Office Action at .pdf 14-72; March 11, 2016 Office Action at .pdf 33-79, 159-172; October 28, 2016 Office Action at .pdf 53-63 (emphasis added).

information to help consumers make well-informed decisions about purchasing health insurance plans.

Searching for a health plan has become more overwhelming with the introduction of the Affordable Care Act – also known as Obamacare. With consumers gearing up for the second open enrollment period on November 15th, **HealthPlans.com** relaunches with the promise to help individuals demystify the health insurance process and choose between plans offered on the public exchanges (e.g. Healthcare.gov), and private plans accessed directly from providers. (businesswire.com).

With the **HealthPlans.com** network reaching more than 7 million health insurance shoppers from October 2013 to October 2014, we decided to poll buyers to identify key issues pertinent to consumers' health insurance choices. The survey provides unique insight on consumers' priorities when searching for a health plan, their health insurance knowledge, and general attitudes around the Affordable Care Act. (healthplans.com).

9,195 Health plans on **Healthplans.com**
24,469,934 Health plan shoppers we've seen this year
5.2 Minutes on average to find a health plan
377,898,162 Health plan matches we've made so far (healthplans.com).

With regard to discussion of the term HEALTHPLAN or HEALTH PLAN by third parties, the Examining Attorney introduced into the record results from LexisNexis database searches for articles using the term "health plans" in connection with health insurance.[9] The following are representative:

Milwaukee Journal Sentinel (Wisconsin)
February 23, 2016 Tuesday
HEADLINE: Health systems' profits up
More people insured through Obamacare behind sharp increase
BYLINE: GUY BOULTON gboulton@journalsentinel.com Milwaukee Journal Sentinel, Staff, Milwaukee Journal Sentinel
BODY:
...fiscal year ended June 30, increasing to $149 million compared with $83.4 million in its 2014 fiscal year.

---

[9] March 11, 2016 Office Action at .pdf 18-24; August 6, 2015 Office Action at .pdf 11-21; March 11, 2016 Office Action at .pdf 19-24.

Columbia St. Mary's operating income was up 26% in its fiscal year ended June 30, increasing to $26.1 million compared with $20.7 million in its 2013 fiscal year.

At least some of those gains have come from the increase in people with health insurance, either through the subsidized health plans sold on the federal marketplaces or the state's partial expansion of its Medicaid program.

Washington Business Journal (District of Columbia)
February 5, 2016 Friday
HEADLINE: A big change in the enrollment process for D.C. Health Link
BYLINE: Tina Reed
BODY:
Officials from the D.C. health exchange are taking a bit of a victory lap this week.

After a couple of glitchy years of enrollment on the website set up to sell insurance plans under Obamacare in the District, D.C. Health Link officials said this enrollment season was finally a smooth process.

There are 22,912 customers signed up for individual health insurance this season, including 6,012 new customers, preliminary figures from the exchange show. That's up about 25 percent from last year when there were 18,400 individuals who selected health plans on D.C. Health Link, including 2,640 existing customers who selected new plans.

Los Angeles Times
July 31, 2015 Friday
Home Edition
HEADLINE: BUSINESS BEAT;
HEALTHCARE WATCH;
Emergency care overseas;
Experts offer tips on how to deal with urgent medical issues when traveling.
BYLINE: Lisa Zamosky, Zamosky is the author of "Healthcare, Insurance, and You: The Savvy Consumer's Guide."
BODY:
Experts offer a range of tips and resources for dealing with an overseas medical emergency.

Insurance coverage. Most health plans cover urgent and emergency care worldwide. The coverage is generally the same as when you go outside your plan's network of doctors and hospitals at home.

Daily Record (Wooster, Ohio)
July 26, 2015 Sunday
SECTION: A; Pg. A.6

LENGTH: 280 words
HEADLINE: Apple Creek considers health insurance changes
BYLINE: JONATHAN SCHOLLES, By JONATHAN SCHOLLES
BODY:
Council heard the second reading of an ordinance Monday that defines employee and dependent eligibility for health insurance coverage through a Wayne County health plan.
In a nutshell, the ordinance states employees whose spouses have insurance available to them must pick it up.

The Examining Attorney also introduced screenshots of third-party health insurance provider websites using the term "health plans" in connection with health insurance.[10] The following are representative:

America's Health Insurance Plans (AHIP) is the national trade association representing the health insurance industry. …
AHIP raises awareness around critical issues facing health plans and advocates for policies that align with the strategic priorities set by the Board of directors. (ahip.org).

Health Plans
Group Health Plans
We offer health and dental plans for businesses with 2 or more employees.
Prefered Blue Accounts (FSA, DCA, HAS, HRA, LFSA)
Find health plans for businesses of two or more people.
BlueCross BlueShield of Alabama (bcbsal.org).

Unity Health Insurance
Affiliated with UW Health
Service Excellence
Unity has been continually rated among the top health plans in the country (unityhealth.com).

Anthem
BlueCross BlueShield
Shop, compare, and sign up right here – for individual or family health plans and Medicare solutions (anthem.com).

---

[10] March 11, 2016 Office Action at .pdf 28-32, 80-107; August 6, 2015 Office Action at .pdf 67-92, 125-26.

See 2015 Marketplace health insurance plans and prices right now. If you qualify for a Special Enrollment Period and want to enroll or change plans, you can preview 2015 health plans and premium quotes before you fill out or update your application. (healthcare.gov).

Welcome to Health Net! Health Net of California, Inc. and Health Net Life Insurance Company (Health Net) want to help you find the health care coverage that fits your health care needs and budget. Let's get started! See our plans Local, affordable health coverage is here! Get more information on health plans that work for you. (healthnet.com).

eHealth Health Plans – Choosing the Right Plan Which health plan is best for you and your family? Choosing the right health plan can be a difficult task. Learn more about your various health plan options to determine what the best health plan is for you and your family. eHealthInsurance is the nation's leading online source of health insurance. eHealthInsurance offers thousands of health plans underwritten by more than 180 of the nation's health insurance companies, including Aetna and Blue Cross Blue Shield. Compare plans side by side, get health insurance quotes, apply online and find affordable health insurance today. (ehealthinsurance.com).

As noted above, HEALTHPLANS.COM is generic if health insurance providers (for both classes) as well as members of the general public who seek health insurance from health insurance providers (for the Class 35 services) understand the term HEALTHPLANS.COM as the genus of services or a "key aspect" thereof. We consider the component "healthplans" separate from the ".com" suffix and then consider if the combination has the same meaning or creates a new meaning. *See Hotels.com*, 91 USPQ2d 1532 at 1304, 1306.

The record in this case clearly shows that "health plan(s)" is a common term that

16

means an organized format for delivering health care insurance.[11] It has been used generically on Applicant's website, as reproduced above (e.g., "Find the Right Health Plan For You"), to indicate organized methods or formats for delivering health insurance.

The suffix ".com" is defined as follows:

> Part of the Internet address of many companies and organizations. It indicates that the site is commercial, as opposed to educational or governmental.

> The phrase "dot-com" is used to refer generically to almost anything connected to business on the Internet.[12]

Absent exceptional circumstances, the addition of the ".com" top-level domain ("TLD") to a generic or descriptive term does not add source-identifying significance and will not transform the otherwise non-distinctive combination into a registrable mark. *Hotels.com*, 91 USPQ2d at 1304 (noting that "registrability does not depend on the .com combination"); *In re Steelbuilding.com*, 415 F.3d 1293, 75 USPQ2d 1420, 1422 (Fed. Cir. 2005) ("Only in rare instances will the addition of a TLD indicator to a descriptive term operate to create a distinctive mark.") (citing *In re Oppedahl & Larson LLP*, 373 F.3d 1171, 71 USPQ2d 1370, 1374 (Fed. Cir. 2004) ("When

---

[11] Because "health plan(s)" or "healthplan(s)" has been used as a term of art in the relevant field, we need not consider the generic significance of the words "health" and "plan(s)" alone. *See In re Shiva Corp.,* 48 USPQ2d 1957 (TTAB 1998).

[12] Dictionary.com, http://www.dictionary.com/browse/-com. The Board may take judicial notice of dictionary definitions, *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imp. Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983), including online dictionaries that exist in printed format or have regular fixed editions. *E.g., In re SnoWizard, Inc.*, 129 USPQ2d 1001, 1004 n.6 (TTAB 2018); *Threshold.TV Inc. v. Metronome Enters. Inc.*, 96 USPQ2d 1031, 1038 n.14 (TTAB 2010); *In re Red Bull GmbH*, 78 USPQ2d 1375, 1378 (TTAB 2006).

examining domain name marks, the PTO must evaluate the commercial impression of the mark as a whole, including the TLD indicator. The addition of a TLD such as '.com' or '.org' to an otherwise unregistrable mark will typically not add any source-identifying significance, similar to the analysis of 'Corp.' and 'Inc.'")). We are mindful that "granting trademark rights over a domain name composed of a generic term and a [top-level domain] grants the trademark holder rights over far more intellectual property than the domain name itself." *Advertise.com, Inc. v. AOL Advert., Inc.*, 616 F.3d 970, 980 (9th Cir. 2010).

The *Oppedahl* court provided the following hypothetical to illustrate circumstances under which a TLD might affect the distinctiveness or registrability of a proposed mark:

> Under the hypothetical, a company seeks to register the mark tennis.net for a store that sells tennis nets. The applicant openly states that it does no business on the Internet and has no intention to ever use the Internet. This hypothetical applicant's mark consists of a descriptive term—"tennis"—and a TLD—".net." The "net" portion alone has no source-identifying significance. The hypothetical mark as a whole, as is immediately apparent, produces a witty double entendre relating to tennis nets, the hypothetical applicant's product. Arguably, the attachment of the TLD to the other descriptive portion of the mark could enhance the prospects of registrability for the mark as a whole. This hypothetical example illustrates that, although TLDs will most often not add any significant source-identifying function to a mark, a bright-line rule might foreclose registration to a mark with a TLD component that can demonstrate distinctiveness.

71 USPQ2d at 1373.

Here, the addition of ".com" to "health plan" or "health plans" is no more than a designation of a commercial entity, like the word "Company," because it does not expand the meaning of "health plan(s)" beyond an organized format for delivering

18

health insurance. A corporate identifier is without source-identifying capability. *See, e.g.*, *Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co.*, 128 U.S. 598, 602 (1888) ("The addition of the word 'Company' only indicates that parties have formed an association or partnership to deal in such goods, either to produce or to sell them."); *In re Wm. B. Coleman Co.*, 93 USPQ2d 2019, 2025 (TTAB 2010) (with respect to ELECTRIC CANDLE COMPANY, "electric candle" is a unitary generic term and "'company' is simply a designation for a type of entity without source-identifying capability"); *In re Cell Therapeutics Inc.*, 67 USPQ2d 1795 (TTAB 2003) (applicant "never argued that the addition of INC. would cause its mark in its entirety (CELL THERAPEUTICS, INC.) to be not generic assuming it were proven that CELL THERAPEUTICS was generic").

Considering the combination HEALTHPLANS.COM as a whole, we find that the combination imparts no new meaning and would be understood by consumers as referring to the genus of services in Class 35. In this case, Applicant provides, *inter alia*, matching services for health insurance plans. Pages from Applicant's website, displayed above, demonstrate that ordinary consumers input information in order to match their health care needs with available health plans provided by health insurers. "HealthPlans.com provides all the information you need to make an informed decision about your health insurance plan. And we put it all in simple, easy-to-understand terms."[13] "Once you're ready to shop plans, we can match you with top

---

[13] September 26, 2014 first Office Action at .pdf 11.

carriers. Just answer some questions about yourself to get started."[14] Thus, Applicant's services match consumer health insurance needs with available health plans. Additional evidence of record, including the representative examples highlighted above, further demonstrates that consumers utilize Applicant's services, as well as the services of third parties, to search, shop for, and obtain health plans available in their locations from public and private health insurers.

Based upon this evidence, we find that relevant consumers would understand HEALTHPLANS.COM as denoting a commercial website for finding and being matched with available health plans, and thus as referring to the genus of Applicant's Class 35 services. HEALTHPLANS.COM thus is generic for the Class 35 services or at least a key aspect of them, namely, providing access to health insurance plans – or health plans – over the Internet. *See Cordua*, 118 USPQ2d at 1638 (explaining that "the term 'pizzeria' would be generic for restaurant services, even though the public understands the term to refer to a particular sub-group or type of restaurant rather than to all restaurants").

In addition, this evidence demonstrates a competitive need for others to use the term "health plan(s)" as part of their own domain names, trademarks and service marks for services similar to those for which Applicant seeks registration. Thus, the designation sought to be registered should not be subject to exclusive appropriation, but rather should remain free for others in the industry to use in connection with their health insurance services. *See In re Boston Beer Co. L.P.*, 198 F.3d 1370, 53

---

[14] *Id.*

USPQ2d 1056 (Fed. Cir. 1999).

Because HEALTHPLANS.COM is generic at least as to certain of the services Applicant offers under its proposed mark in Class 35, the mark is unregistrable as to this entire class of services. *See In re Analog Devices Inc.*, 6 USPQ2d 1808, 1810 (TTAB 1988), *aff'd*, 871 F.2d 1097, 10 USPQ2d 1879 (Fed. Cir. 1989) (unpublished).

Turning to the services in Class 42, they involve "providing temporary use of on-line non-downloadable software and applications for facilitating the tracking, administration, billing, and reporting of advertising via an on-line communications network." The relevant purchasers for these services are insurers. These services appear to be ancillary to, rather than an integral part of, providing health insurance. Based on the identification of services, advertising is the central focus of these services, and while the subject matter of the advertising is health plans, the services do not involve provision of, or providing access to, health plans. Viewed in its entirety, the evidence of record indicates that HEALTHPLANS.COM in the context of these services merely describes a feature or characteristic of the services, but falls short of clearly demonstrating that insurers seeking to track, administer, bill and report advertising over the Internet in the field of health insurance will understand HEALTHPLANS.COM to refer to the genus of Applicant's Class 42 services.

## A. Summary

The Examining Attorney's refusal of registration on the Principal Register under Trademark Act Sections 1, 2, 3 and 45, 15 U.S.C. §§ 1051, 1052, 1053 and 1127 is affirmed as to both classes.

The Examining Attorney's refusal of registration on the Supplemental Register under Section 23(c) of the Trademark Act, 15 U.S.C. § 1091(c), on the ground that Applicant's proposed mark is a generic term is affirmed as to the identified services in International Classes 35, and reversed as to the services in International Class 42.