(Slip Opinion) OCTOBER TERM, 2019 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES PATENT AND TRADEMARK OFFICE ET AL. *v.* BOOKING.COM B. V.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 19–46. Argued May 4, 2020—Decided June 30, 2020

A generic name—the name of a class of products or services—is ineligible for federal trademark registration. Respondent Booking.com, an enterprise that maintains a travel-reservation website by the same name, sought federal registration of marks including the term "Booking.com." Concluding that "Booking.com" is a generic name for online hotel-reservation services, the U. S. Patent and Trademark Office (PTO) refused registration. Booking.com sought judicial review, and the District Court determined that "Booking.com"—unlike the term "booking" standing alone—is not generic. The Court of Appeals affirmed, finding no error in the District Court's assessment of how consumers perceive the term "Booking.com." The appellate court also rejected the PTO's contention that, as a rule, combining a generic term like "booking" with ".com" yields a generic composite.

*Held*: A term styled "generic.com" is a generic name for a class of goods or services only if the term has that meaning to consumers. Pp. 6–14.

 (a) Whether a compound term is generic turns on whether that term, taken as a whole, signifies to consumers a class of goods or services. The courts below determined, and the PTO no longer disputes, that consumers do not in fact perceive the term "Booking.com" that way. Because "Booking.com" is not a generic name to consumers, it is not generic. Pp. 6–7.

 (b) Opposing that determination, the PTO urges a nearly *per se* rule: When a generic term is combined with a generic Internet-domain-name suffix like ".com," the resulting combination is generic. The rule the PTO proffers is not borne out by the PTO's own past practice and lacks support in trademark law or policy. Pp. 7–14.

 (1) The PTO's proposed rule does not follow from *Goodyear's India*

*Rubber Glove Mfg. Co.* v. *Goodyear Rubber Co.*, 128 U. S. 598. *Goodyear*, the PTO maintains, established that adding a generic corporate designation like "Company" to a generic term does not confer trademark eligibility. According to the PTO, adding ".com" to a generic term—like adding "Company"—can convey no source-identifying meaning. That premise is faulty, for only one entity can occupy a particular Internet domain name at a time, so a "generic.com" term could convey to consumers an association with a particular website. Moreover, an unyielding legal rule that entirely disregards consumer perception is incompatible with a bedrock principle of the Lanham Act: The generic (or nongeneric) character of a particular term depends on its meaning to consumers, *i.e.*, do consumers in fact perceive the term as the name of a class or, instead, as a term capable of distinguishing among members of the class. Pp. 8–11.

    (2) The PTO's policy concerns do not support a categorical rule against registration of "generic.com" terms. The PTO asserts that trademark protection for "Booking.com" would give the mark owner undue control over similar language that others should remain free to use. That concern attends any descriptive mark. Guarding against the anticompetitive effects the PTO identifies, several doctrines ensure that registration of "Booking.com" would not yield its holder a monopoly on the term "booking." The PTO also doubts that owners of "generic.com" brands need trademark protection in addition to existing competitive advantages. Such advantages, however, do not inevitably disqualify a mark from federal registration. Finally, the PTO urges that Booking.com could seek remedies outside trademark law, but there is no basis to deny Booking.com the same benefits Congress accorded other marks qualifying as nongeneric. Pp. 11–14.

915 F. 3d 171, affirmed.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, ALITO, SOTOMAYOR, KAGAN, GORSUCH, and KAVANAUGH, JJ., joined. SOTOMAYOR, J., filed a concurring opinion. BREYER, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———

No. 19–46

———

## UNITED STATES PATENT AND TRADEMARK OFFICE, ET AL., PETITIONERS *v.* BOOKING.COM B. V.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[June 30, 2020]

JUSTICE GINSBURG delivered the opinion of the Court.

This case concerns eligibility for federal trademark registration. Respondent Booking.com, an enterprise that maintains a travel-reservation website by the same name, sought to register the mark "Booking.com." Concluding that "Booking.com" is a generic name for online hotel-reservation services, the U. S. Patent and Trademark Office (PTO) refused registration.

A generic name—the name of a class of products or services—is ineligible for federal trademark registration. The word "booking," the parties do not dispute, is generic for hotel-reservation services. "Booking.com" must also be generic, the PTO maintains, under an encompassing rule the PTO currently urges us to adopt: The combination of a generic word and ".com" is generic.

In accord with the first- and second-instance judgments in this case, we reject the PTO's sweeping rule. A term styled "generic.com" is a generic name for a class of goods or services only if the term has that meaning to consumers. Consumers, according to lower court determinations uncontested here by the PTO, do not perceive the term

"Booking.com" to signify online hotel-reservation services as a class. In circumstances like those this case presents, a "generic.com" term is not generic and can be eligible for federal trademark registration.

## I
## A

A trademark distinguishes one producer's goods or services from another's. Guarding a trademark against use by others, this Court has explained, "secure[s] to the owner of the mark the goodwill" of her business and "protect[s] the ability of consumers to distinguish among competing producers." *Park 'N Fly*, *Inc.* v. *Dollar Park & Fly*, *Inc.*, 469 U. S. 189, 198 (1985); see S. Rep. No. 1333, 79th Cong., 2d Sess., 3 (1946) (trademark statutes aim to "protect the public so it may be confident that, in purchasing a product bearing a particular trade-mark which it favorably knows, it will get the product which it asks for and wants to get"). Trademark protection has roots in common law and equity. *Matal* v. *Tam*, 582 U. S. ___, ___ (2017) (slip op., at 2). Today, the Lanham Act, enacted in 1946, provides federal statutory protection for trademarks. 60 Stat. 427, as amended, 15 U. S. C. §1051 *et seq.* We have recognized that federal trademark protection, supplementing state law, "supports the free flow of commerce" and "foster[s] competition." *Matal*, 582 U. S., at ___, ___–___ (slip op., at 3, 4–5) (internal quotation marks omitted).

The Lanham Act not only arms trademark owners with federal claims for relief; importantly, it establishes a system of federal trademark registration. The owner of a mark on the principal register enjoys "valuable benefits," including a presumption that the mark is valid. *Iancu* v. *Brunetti*, 588 U. S. ___, ___ (2019) (slip op., at 2); see §§1051, 1052. The supplemental register contains other product and service designations, some of which could one day gain eligibility for the principal register. See §1091. The supplemental

register accords more modest benefits; notably, a listing on that register announces one's use of the designation to others considering a similar mark. See 3 J. McCarthy, Trademarks and Unfair Competition §19:37 (5th ed. 2019) (hereinafter McCarthy). Even without federal registration, a mark may be eligible for protection against infringement under both the Lanham Act and other sources of law. See *Matal*, 582 U. S., at \_\_\_–\_\_\_ (slip op., at 4–5).

Prime among the conditions for registration, the mark must be one "by which the goods of the applicant may be distinguished from the goods of others." §1052; see §1091(a) (supplemental register contains "marks capable of distinguishing . . . goods or services"). Distinctiveness is often expressed on an increasing scale: Word marks "may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos*, *Inc.* v. *Taco Cabana*, *Inc.*, 505 U. S. 763, 768 (1992).

The more distinctive the mark, the more readily it qualifies for the principal register. The most distinctive marks— those that are "'arbitrary' ('Camel' cigarettes), 'fanciful' ('Kodak' film), or 'suggestive' ('Tide' laundry detergent)"— may be placed on the principal register because they are "inherently distinctive." *Wal-Mart Stores*, *Inc.* v. *Samara Brothers*, *Inc.*, 529 U. S. 205, 210–211 (2000). "Descriptive" terms, in contrast, are not eligible for the principal register based on their inherent qualities alone. *E.g.*, *Park 'N Fly*, *Inc.* v. *Dollar Park & Fly*, *Inc.*, 718 F. 2d 327, 331 (CA9 1983) ("Park 'N Fly" airport parking is descriptive), rev'd on other grounds, 469 U. S. 189 (1985). The Lanham Act, "liberaliz[ing] the common law," "extended protection to descriptive marks." *Qualitex Co.* v. *Jacobson Products Co.*, 514 U. S. 159, 171 (1995). But to be placed on the principal register, descriptive terms must achieve significance "in the minds of the public" as identifying the applicant's goods or services—a quality called "acquired distinctiveness" or "secondary meaning." *Wal-Mart Stores*, 529 U. S., at 211

(internal quotation marks omitted); see §1052(e), (f). Without secondary meaning, descriptive terms may be eligible only for the supplemental register. §1091(a).

At the lowest end of the distinctiveness scale is "the generic name for the goods or services." §§1127, 1064(3), 1065(4). The name of the good itself (*e.g.*, "wine") is incapable of "distinguish[ing] [one producer's goods] from the goods of others" and is therefore ineligible for registration. §1052; see §1091(a). Indeed, generic terms are ordinarily ineligible for protection as trademarks at all. See Restatement (Third) of Unfair Competition §15, p. 142 (1993); *Otokoyama Co.* v. *Wine of Japan Import, Inc.*, 175 F. 3d 266, 270 (CA2 1999) ("[E]veryone may use [generic terms] to refer to the goods they designate.").

### B

Booking.com is a digital travel company that provides hotel reservations and other services under the brand "Booking.com," which is also the domain name of its website.[1] Booking.com filed applications to register four marks in connection with travel-related services, each with different visual features but all containing the term "Booking.com."[2]

Both a PTO examining attorney and the PTO's Trademark Trial and Appeal Board concluded that the term "Booking.com" is generic for the services at issue and is therefore unregistrable. "Booking," the Board observed, means making travel reservations, and ".com" signifies a

---

[1] A domain name identifies an address on the Internet. The rightmost component of a domain name—".com" in "Booking.com"—is known as the top-level domain. Domain names are unique; that is, a given domain name is assigned to only one entity at a time.

[2] For simplicity, this opinion uses the term "trademark" to encompass the marks whose registration Booking.com seeks. Although Booking.com uses the marks in connection with services, not goods, rendering the marks "service marks" rather than "trademarks" under 15 U. S. C. §1127, that distinction is immaterial to the issue before us.

commercial website. The Board then ruled that "customers would understand the term BOOKING.COM primarily to refer to an online reservation service for travel, tours, and lodgings." App. to Pet. for Cert. 164a, 176a. Alternatively, the Board held that even if "Booking.com" is descriptive, not generic, it is unregistrable because it lacks secondary meaning.

Booking.com sought review in the U. S. District Court for the Eastern District of Virginia, invoking a mode of review that allows Booking.com to introduce evidence not presented to the agency. See §1071(b). Relying in significant part on Booking.com's new evidence of consumer perception, the District Court concluded that "Booking.com"—unlike "booking"—is not generic. The "consuming public," the court found, "primarily understands that BOOKING.COM does not refer to a genus, rather it is descriptive of services involving 'booking' available at that domain name." *Booking.com B.V.* v. *Matal*, 278 F. Supp. 3d 891, 918 (2017). Having determined that "Booking.com" is descriptive, the District Court additionally found that the term has acquired secondary meaning as to hotel-reservation services. For those services, the District Court therefore concluded, Booking.com's marks meet the distinctiveness requirement for registration.

The PTO appealed only the District Court's determination that "Booking.com" is not generic. Finding no error in the District Court's assessment of how consumers perceive the term "Booking.com," the Court of Appeals for the Fourth Circuit affirmed the court of first instance's judgment. In so ruling, the appeals court rejected the PTO's contention that the combination of ".com" with a generic term like "booking" "is *necessarily* generic." 915 F. 3d 171, 184 (2019). Dissenting in relevant part, Judge Wynn concluded that the District Court mistakenly presumed that "generic.com" terms are usually descriptive, not generic.

We granted certiorari, 589 U. S. ___ (2019), and now affirm the Fourth Circuit's decision.

II

Although the parties here disagree about the circumstances in which terms like "Booking.com" rank as generic, several guiding principles are common ground.  First, a "generic" term names a "class" of goods or services, rather than any particular feature or exemplification of the class.  Brief for Petitioners 4; Brief for Respondent 6; see §§1127, 1064(3), 1065(4) (referring to "the generic name for the goods or services"); *Park 'N Fly*, 469 U. S., at 194 ("A generic term is one that refers to the genus of which the particular product is a species.").  Second, for a compound term, the distinctiveness inquiry trains on the term's meaning as a whole, not its parts in isolation.  Reply Brief 9; Brief for Respondent 2; see *Estate of P. D. Beckwith, Inc.* v. *Commissioner of Patents*, 252 U. S. 538, 545–546 (1920).  Third, the relevant meaning of a term is its meaning to consumers.   Brief for Petitioners 43–44;  Brief for Respondent 2; see *Bayer Co.* v. *United Drug Co.*, 272 F. 505, 509 (SDNY 1921) (Hand, J.) ("What do the buyers understand by the word for whose use the parties are contending?").  Eligibility for registration, all agree, turns on the mark's capacity to "distinguis[h]" goods "in commerce." §1052.  Evidencing the Lanham Act's focus on consumer perception, the section governing cancellation of registration provides that "[t]he primary significance of the registered mark to the relevant public . . . shall be the test for determining whether the registered mark has become the generic name of goods or services." §1064(3).[3]

---

[3]The U. S. Patent and Trademark Office (PTO) suggests that the primary-significance test might not govern outside the context of §1064(3), which subjects to cancellation marks previously registered that have "become" generic.  See Reply Brief 11; Tr. of Oral Arg. 19.  To

Under these principles, whether "Booking.com" is generic turns on whether that term, taken as a whole, signifies to consumers the class of online hotel-reservation services. Thus, if "Booking.com" were generic, we might expect consumers to understand Travelocity—another such service—to be a "Booking.com." We might similarly expect that a consumer, searching for a trusted source of online hotel-reservation services, could ask a frequent traveler to name her favorite "Booking.com" provider.

Consumers do not in fact perceive the term "Booking.com" that way, the courts below determined. The PTO no longer disputes that determination. See Pet. for Cert. I; Brief for Petitioners 17–18 (contending only that a consumer-perception inquiry was unnecessary, not that the lower courts' consumer-perception determination was wrong). That should resolve this case: Because "Booking.com" is not a generic name to consumers, it is not generic.

## III

Opposing that conclusion, the PTO urges a nearly *per se* rule that would render "Booking.com" ineligible for registration regardless of specific evidence of consumer perception. In the PTO's view, which the dissent embraces, when a generic term is combined with a generic top-level domain

––––––––––

so confine the primary-significance test, however, would upset the understanding, shared by Courts of Appeals and the PTO's own manual for trademark examiners, that the same test governs whether a mark is registrable in the first place. See, *e.g.*, *In re Cordua Restaurants, Inc.*, 823 F. 3d 594, 599 (CA Fed. 2016); *Nartron Corp.* v. *STMicroelectronics, Inc.*, 305 F. 3d 397, 404 (CA6 2002); *Genesee Brewing Co.* v. *Stroh Brewing Co.*, 124 F. 3d 137, 144 (CA2 1997); Trademark Manual of Examining Procedure §1209.01(c)(i), p. 1200–267 (Oct. 2018), http://tmep.uspto.gov. We need not address today the scope of the primary-significance test's application, for our analysis does not depend on whether one meaning among several is "primary." Sufficient to resolve this case is the undisputed principle that consumer perception demarcates a term's meaning.

like ".com," the resulting combination is generic.  In other words, every "generic.com" term is generic according to the PTO, absent exceptional circumstances.[4]

The PTO's own past practice appears to reflect no such comprehensive rule.  See, *e.g.*, Trademark Registration No. 3,601,346 ("ART.COM" on principal register for, *inter alia*, "[o]nline retail store services" offering "art prints, original art, [and] art reproductions"); Trademark Registration No. 2,580,467 ("DATING.COM" on supplemental register for "dating services").  Existing registrations inconsistent with the rule the PTO now advances would be at risk of cancellation if the PTO's current view were to prevail.  See §1064(3).  We decline to adopt a rule essentially excluding registration of "generic.com" marks.  As explained below, we discern no support for the PTO's current view in trademark law or policy.

## A

The PTO urges that the exclusionary rule it advocates follows from a common-law principle, applied in *Goodyear's India Rubber Glove Mfg. Co.* v. *Goodyear Rubber Co.*, 128 U. S. 598 (1888), that a generic corporate designation added to a generic term does not confer trademark eligibility.  In *Goodyear*, a decision predating the Lanham Act, this Court held that "Goodyear Rubber Company" was not "capable of exclusive appropriation."  *Id.*, at 602.  Standing alone, the term "Goodyear Rubber" could not serve as a trademark because it referred, in those days, to "well-known classes of goods produced by the process known as Goodyear's invention."  *Ibid.*  "[A]ddition of the word 'Company'" supplied no protectable meaning, the Court concluded,

---

[4] The PTO notes only one possible exception: Sometimes adding a generic term to a generic top-level domain results in wordplay (for example, "tennis.net").  That special case, the PTO acknowledges, is not presented here and does not affect our analysis.  See Brief for Petitioners 25, n. 6; Tr. of Oral Arg. 25–26.

because adding "Company" "only indicates that parties have formed an association or partnership to deal in such goods." *Ibid.* Permitting exclusive rights in "Goodyear Rubber Company" (or "Wine Company, Cotton Company, or Grain Company"), the Court explained, would tread on the right of all persons "to deal in such articles, and to publish the fact to the world." *Id.*, at 602–603.

"Generic.com," the PTO maintains, is like "Generic Company" and is therefore ineligible for trademark protection, let alone federal registration. According to the PTO, adding ".com" to a generic term—like adding "Company"—"conveys no additional meaning that would distinguish [one provider's] services from those of other providers." Brief for Petitioners 44. The dissent endorses that proposition: "Generic.com" conveys that the generic good or service is offered online "and nothing more." *Post*, at 1.

That premise is faulty. A "generic.com" term might also convey to consumers a source-identifying characteristic: an association with a particular website. As the PTO and the dissent elsewhere acknowledge, only one entity can occupy a particular Internet domain name at a time, so "[a] consumer who is familiar with that aspect of the domain-name system can infer that BOOKING.COM refers to *some* specific entity." Brief for Petitioners 40. See also Tr. of Oral Arg. 5 ("Because domain names are one of a kind, a significant portion of the public will always understand a generic '.com' term to refer to a specific business . . . ."); *post*, at 7 (the "exclusivity" of "generic.com" terms sets them apart from terms like "Wine, Inc." and "The Wine Company"). Thus, consumers could understand a given "generic.com" term to describe the corresponding website or to identify the website's proprietor. We therefore resist the PTO's position that "generic.com" terms are capable of signifying only an entire class of online goods or services and, hence,

are categorically incapable of identifying a source.[5]

The PTO's reliance on *Goodyear* is flawed in another respect. The PTO understands *Goodyear* to hold that "Generic Company" terms "are ineligible for trademark protection *as a matter of law*"—regardless of how "consumers would understand" the term. Brief for Petitioners 38. But, as noted, whether a term is generic depends on its meaning to consumers. *Supra*, at 6. That bedrock principle of the Lanham Act is incompatible with an unyielding legal rule that entirely disregards consumer perception. Instead, *Goodyear* reflects a more modest principle harmonious with Congress' subsequent enactment: A compound of generic elements is generic if the combination yields no additional meaning *to consumers* capable of distinguishing the goods or services.

The PTO also invokes the oft-repeated principle that "no matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise

———————

[5] In passing, the PTO urges us to disregard that a domain name is assigned to only one entity at a time. That fact, the PTO suggests, stems from "a functional characteristic of the Internet and the domain-name system," and functional features cannot receive trademark protection. Brief for Petitioners 32. "[A] product feature is functional, and cannot serve as a trademark," we have held, "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *TrafFix Devices, Inc.* v. *Marketing Displays, Inc.*, 532 U. S. 23, 32 (2001) (internal quotation marks omitted); see §1052(e) (barring from the principal registrar "any matter that, as a whole, is functional"). This case, however, does not concern trademark protection for a feature of the Internet or the domain-name system; Booking.com lays no claim to the use of unique domain names generally. Nor does the PTO contend that the particular domain name "Booking.com" is essential to the use or purpose of online hotel-reservation services, affects these services' cost or quality, or is otherwise necessary for competitors to use. In any event, we have no occasion to decide the applicability of §1052(e)'s functionality bar, for the sole ground on which the PTO refused registration, and the sole claim before us, is that "Booking.com" is generic.

. . . , it cannot deprive competing manufacturers of the product of the right to call an article by its name." *Abercrombie & Fitch Co.* v. *Hunting World, Inc.*, 537 F. 2d 4, 9 (CA2 1976). That principle presupposes that a generic term is at issue. But the PTO's only legal basis for deeming "generic.com" terms generic is its mistaken reliance on *Goodyear*.

While we reject the rule proffered by the PTO that "generic.com" terms are generic names, we do not embrace a rule automatically classifying such terms as nongeneric. Whether any given "generic.com" term is generic, we hold, depends on whether consumers in fact perceive that term as the name of a class or, instead, as a term capable of distinguishing among members of the class.[6]

## B

The PTO, echoed by the dissent, *post*, at 10–12, objects that protecting "generic.com" terms as trademarks would

————————

[6] Evidence informing that inquiry can include not only consumer surveys, but also dictionaries, usage by consumers and competitors, and any other source of evidence bearing on how consumers perceive a term's meaning. Surveys can be helpful evidence of consumer perception but require care in their design and interpretation. See Brief for Trademark Scholars as *Amici Curiae* 18–20 (urging that survey respondents may conflate the fact that domain names are exclusive with a conclusion that a given "generic.com" term has achieved secondary meaning). Moreover, difficult questions may be presented when a term has multiple concurrent meanings to consumers or a meaning that has changed over time. See, *e.g.*, 2 J. McCarthy, Trademarks and Unfair Competition §12:51 (5th ed. 2019) (discussing terms that are "a generic name to some, a trademark to others"); *id.*, §12:49 ("Determining the distinction between generic and trademark usage of a word . . . when there are no other sellers of [the good or service] is one of the most difficult areas of trademark law."). Such issues are not here entailed, for the PTO does not contest the lower courts' assessment of consumer perception in this case. See Pet. for Cert. I; Brief for Petitioners 17–18. For the same reason, while the dissent questions the evidence on which the lower courts relied, *post*, at 7–8, 9, we have no occasion to reweigh that evidence. Cf. *post*, at 1–2 (SOTOMAYOR, J., concurring).

disserve trademark law's animating policies.  We disagree.

The PTO's principal concern is that trademark protection for a term like "Booking.com" would hinder competitors. But the PTO does not assert that others seeking to offer online hotel-reservation services need to call their services "Booking.com."  Rather, the PTO fears that trademark protection for "Booking.com" could exclude or inhibit competitors from using the term "booking" or adopting domain names like "ebooking.com" or "hotel-booking.com."  Brief for Petitioners 27–28.  The PTO's objection, therefore, is not to exclusive use of "Booking.com" as a mark, but to undue control over similar language, *i.e.*, "booking," that others should remain free to use.

That concern attends any descriptive mark.  Responsive to it, trademark law hems in the scope of such marks short of denying trademark protection altogether.  Notably, a competitor's use does not infringe a mark unless it is likely to confuse consumers.  See §§1114(1), 1125(a)(1)(A); 4 McCarthy §23:1.50 (collecting state law).  In assessing the likelihood of confusion, courts consider the mark's distinctiveness: "The weaker a mark, the fewer are the junior uses that will trigger a likelihood of consumer confusion."  2 *id.*, §11:76.  When a mark incorporates generic or highly descriptive components, consumers are less likely to think that other uses of the common element emanate from the mark's owner.  *Ibid.*  Similarly, "[i]n a 'crowded' field of look-alike marks" (*e.g.*, hotel names including the word "grand"), consumers "may have learned to carefully pick out" one mark from another.  *Id.*, §11:85.  And even where some consumer confusion exists, the doctrine known as classic fair use, see *id.*, §11:45, protects from liability anyone who uses a descriptive term, "fairly and in good faith" and "otherwise than as a mark," merely to describe her own goods.  15 U. S. C. §1115(b)(4); see *KP Permanent Make-Up, Inc.* v. *Lasting Impression I, Inc.*, 543 U. S. 111, 122–123 (2004).

These doctrines guard against the anticompetitive effects the PTO identifies, ensuring that registration of "Booking.com" would not yield its holder a monopoly on the term "booking." Booking.com concedes that "Booking.com" would be a "weak" mark. Tr. of Oral Arg. 66. See also *id.*, at 42–43, 55. The mark is descriptive, Booking.com recognizes, making it "harder . . . to show a likelihood of confusion." *Id.*, at 43. Furthermore, because its mark is one of many "similarly worded marks," Booking.com accepts that close variations are unlikely to infringe. *Id.*, at 66. And Booking.com acknowledges that federal registration of "Booking.com" would not prevent competitors from using the word "booking" to describe their own services. *Id.*, at 55.

The PTO also doubts that owners of "generic.com" brands need trademark protection in addition to existing competitive advantages. Booking.com, the PTO argues, has already seized a domain name that no other website can use and is easy for consumers to find. Consumers might enter "the word 'booking' in a search engine," the PTO observes, or "proceed directly to 'booking.com' in the expectation that [online hotel-booking] services will be offered at that address." Brief for Petitioners 32. Those competitive advantages, however, do not inevitably disqualify a mark from federal registration. All descriptive marks are intuitively linked to the product or service and thus might be easy for consumers to find using a search engine or telephone directory. The Lanham Act permits registration nonetheless. See §1052(e), (f). And the PTO fails to explain how the exclusive connection between a domain name and its owner makes the domain name a generic term all should be free to use. That connection makes trademark protection more appropriate, not less. See *supra*, at 9.

Finally, even if "Booking.com" is generic, the PTO urges, unfair-competition law could prevent others from passing off their services as Booking.com's. Cf. *Genesee Brewing Co.*

v. *Stroh Brewing Co.*, 124 F. 3d 137, 149 (CA2 1997); *Blinded Veterans Assn.* v. *Blinded Am. Veterans Foundation*, 872 F. 2d 1035, 1042–1048 (CADC 1989).  But federal trademark registration would offer Booking.com greater protection.  See, *e.g.*, *Genesee Brewing*, 124 F. 3d, at 151 (unfair-competition law would oblige competitor at most to "make more of an effort" to reduce confusion, not to cease marketing its product using the disputed term); *Matal*, 582 U. S., at ___ (slip op., at 5) (federal registration confers valuable benefits); Brief for Respondent 26 (expressing intention to seek protections available to trademark owners under the Anticybersquatting Consumer Protection Act, 15 U. S. C. §1125(d)); Brief for Coalition of .Com Brand Owners as *Amici Curiae* 14–19 (trademark rights allow mark owners to stop domain-name abuse through private dispute resolution without resorting to litigation).  We have no cause to deny Booking.com the same benefits Congress accorded other marks qualifying as nongeneric.

\*   \*   \*

The PTO challenges the judgment below on a sole ground: It urges that, as a rule, combining a generic term with ".com" yields a generic composite.  For the above-stated reasons, we decline a rule of that order, one that would largely disallow registration of "generic.com" terms and open the door to cancellation of scores of currently registered marks. Accordingly, the judgment of the Court of Appeals for the Fourth Circuit regarding eligibility for trademark registration is

*Affirmed.*

# SUPREME COURT OF THE UNITED STATES

No. 19–46

UNITED STATES PATENT AND TRADEMARK OFFICE, ET AL., PETITIONERS *v.* BOOKING.COM B. V.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

[June 30, 2020]

JUSTICE SOTOMAYOR, concurring.

The question before the Court here is simple: whether there is a nearly *per se* rule against trademark protection for a "generic.com" term. See *ante*, at 7–8; *post*, at 10 (BREYER, J., dissenting). I agree with the Court that there is no such rule, a holding that accords with how the U. S. Patent and Trademark Office (PTO) has treated such terms in the past. See *ante*, at 8 (noting that the "PTO's own past practice appears to reflect no such comprehensive rule"). I add two observations.

First, the dissent wisely observes that consumer-survey evidence "may be an unreliable indicator of genericness." *Post*, at 9–10. Flaws in a specific survey design, or weaknesses inherent in consumer surveys generally, may limit the probative value of surveys in determining whether a particular mark is descriptive or generic in this context. But I do not read the Court's opinion to suggest that surveys are the be-all and end-all. As the Court notes, sources such as "dictionaries, usage by consumers and competitors, and any other source of evidence bearing on how consumers perceive a term's meaning" may also inform whether a mark is generic or descriptive. *Ante*, at 11, n. 6.

Second, the PTO may well have properly concluded, based on such dictionary and usage evidence, that Booking.com is in fact generic for the class of services at issue

here, and the District Court may have erred in concluding to the contrary.  But that question is not before the Court. With these understandings, I concur in the Court's opinion.

# SUPREME COURT OF THE UNITED STATES

_____

No. 19–46

_____

## UNITED STATES PATENT AND TRADEMARK OFFICE, ET AL., PETITIONERS *v.* BOOKING.COM B. V.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FOURTH CIRCUIT

[June 30, 2020]

JUSTICE BREYER, dissenting.

What is Booking.com? To answer this question, one need only consult the term itself. Respondent provides an online booking service. The company's name informs the consumer of the basic nature of its business and nothing more. Therein lies the root of my disagreement with the majority.

Trademark law does not protect generic terms, meaning terms that do no more than name the product or service itself. This principle preserves the linguistic commons by preventing one producer from appropriating to its own exclusive use a term needed by others to describe their goods or services. Today, the Court holds that the addition of ".com" to an otherwise generic term, such as "booking," can yield a protectable trademark. Because I believe this result is inconsistent with trademark principles and sound trademark policy, I respectfully dissent.

## I

### A

Trademark law protects those "'distinctive marks—words, names, symbols, and the like'" that "'distinguish a particular artisan's goods from those of others.'" *Matal* v. *Tam*, 582 U. S. \_\_\_, \_\_\_ (2017) (slip op., at 2) (quoting *B&B Hardware, Inc.* v. *Hargis Industries, Inc.*, 575 U. S. 138, 142 (2015)). To determine whether a given term is sufficiently

distinctive to serve as a trademark, courts generally place it in one of five categories. The first four kinds of terms are eligible for federal trademark registration. The fifth is not.

I list the first three only to give context and allow comparisons. They are: (1) "'fanciful'" terms, such as "Kodak" (film); (2) "'arbitrary'" terms, such as "Camel" (cigarettes); and (3) "'suggestive'" terms, such as "Tide" (laundry detergent). *Ante,* at 3. These kinds of terms are "'inherently distinctive.'" *Ibid.* The public can readily understand that they identify and distinguish the goods or services of one firm from those of all others. See *Two Pesos, Inc.* v. *Taco Cabana, Inc.*, 505 U. S. 763, 768 (1992). By preventing others from copying a distinctive mark, trademark law "protect[s] the ability of consumers to distinguish among competing producers" and "secure[s] to the owner of the mark the goodwill of his business." *Park 'N Fly, Inc.* v. *Dollar Park & Fly, Inc.*, 469 U. S. 189, 198 (1985). Ultimately, the purpose of trademark law is to "foster competition" and "suppor[t] the free flow of commerce." *Matal*, 582 U. S., at ___ (slip op., at 3) (internal quotation marks omitted).

This case concerns two further categories. There are "descriptive" terms, such as "Best Buy" (electronics) or "First National Bank" (banking services), that "immediately conve[y] information concerning a feature, quality, or characteristic" of the producer's goods or services. *In re North Carolina Lottery*, 866 F. 3d 1363, 1367 (CA Fed. 2017). A descriptive term can be registered as a trademark only if it acquires "secondary meaning"—*i.e.,* the public has come to associate it with a particular firm or its product. *Two Pesos*, 505 U. S., at 769.

There are also "generic" terms, such as "wine" or "haircuts." They do nothing more than inform the consumer of the kind of product that the firm sells. We have called generic terms "descriptive of a class of goods." *Goodyear's India Rubber Glove Mfg. Co.* v. *Goodyear Rubber Co.*, 128 U. S. 598, 602 (1888). And we have said that they simply

convey the "genus of which the particular product is a species." *Park 'N Fly*, 469 U. S., at 196. A generic term is not eligible for use as a trademark. That principle applies even if a particular generic term "ha[s] become identified with a first user" in the minds of the consuming public. *CES Publishing Corp.* v. *St. Regis Publications, Inc.*, 531 F. 2d 11, 13 (CA2 1975) (Friendly, J.). The reason is simple. To hold otherwise "would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are." *Ibid.*

Courts have recognized that it is not always easy to distinguish generic from descriptive terms. See, *e.g., Abercrombie & Fitch Co.* v. *Hunting World, Inc.*, 537 F. 2d 4, 9 (CA2 1976) (Friendly, J.). It is particularly difficult to do so when a firm wishes to string together two or more generic terms to create a compound term. Despite the generic nature of its component parts, the term as a whole is not necessarily generic. In such cases, courts must determine whether the combination of generic terms conveys some distinctive, source-identifying meaning that each term, individually, lacks. See 2 J. McCarthy, Trademarks and Unfair Competition §12:39 (5th ed. June 2020 update) (McCarthy). If the meaning of the whole is no greater than the sum of its parts, then the compound is itself generic. See *Princeton Vanguard, LLC* v. *Frito-Lay North Am., Inc.*, 786 F. 3d 960, 966–967 (CA Fed. 2015); *In re Gould Paper Corp.*, 834 F. 2d 1017, 1018 (CA Fed. 1987) (registration is properly denied if "the separate words joined to form a compound have a meaning identical to the meaning common usage would ascribe to those words as a compound"); see also 2 McCarthy §12:39 (collecting examples of compound terms held to be generic).

In *Goodyear,* 128 U. S. 598, we held that appending the word "'Company'" to the generic name for a class of goods does not yield a protectable compound term. *Id.,* at 602–603. The addition of a corporate designation, we explained,

"only indicates that parties have formed an association or partnership to deal in such goods." *Id.,* at 602. For instance, "parties united to produce or sell wine, or to raise cotton or grain," may well "style themselves Wine Company, Cotton Company, or Grain Company." *Ibid.* But they would not thereby gain the right to exclude others from the use of those terms "for the obvious reason that all persons have a right to deal in such articles, and to publish the fact to the world." *Id.,* at 603. "[I]ncorporation of a company in the name of an article of commerce, without other specification," we concluded, does not "create any exclusive right to the use of the name." *Ibid.*

I cannot agree with respondent that the 1946 Lanham Act "repudiate[d] *Goodyear* and its ilk." Brief for Respondent 39. It is true that the Lanham Act altered the common law in certain important respects. Most significantly, it extended trademark protection to descriptive marks that have acquired secondary meaning. See *Qualitex Co.* v. *Jacobson Products Co.*, 514 U. S. 159, 171 (1995). But it did not disturb the basic principle that *generic* terms are ineligible for trademark protection, and nothing in the Act suggests that Congress intended to overturn *Goodyear*. We normally assume that Congress did not overturn a common-law principle absent some indication to the contrary. See *Astoria Fed. Sav. & Loan Assn.* v. *Solimino*, 501 U. S. 104, 108 (1991). I can find no such indication here. Perhaps that is why the lower courts, the Trademark Trial and Appeal Board (TTAB), the U. S. Patent and Trademark Office's (PTO) Trademark Manual of Examining Procedure (TMEP), and leading treatises all recognize *Goodyear*'s continued validity. See, *e.g., In re Detroit Athletic Co.*, 903 F. 3d 1297, 1304 (CA Fed. 2018); *In re Katch, LLC,* 2019 WL 2560528, *10 (TTAB 2019); TMEP §§1209.03(d) (Oct. 2018); 2 McCarthy §12:39; 4 L. Altman & M. Pollack, Callmann on Unfair Competition, Trademarks and Monopolies §18:11 (4th ed., June 2020 update).

More fundamentally, the *Goodyear* principle is sound as a matter of law and logic. *Goodyear* recognized that designations such as "Company," "Corp.," and "Inc." merely indicate corporate form and therefore do nothing to distinguish one firm's goods or services from all others'. 128 U. S., at 602. It follows that the addition of such a corporate designation does not "magically transform a generic name for a product or service into a trademark, thereby giving a right to exclude others." 2 McCarthy §12:39. In other words, where a compound term consists simply of a generic term plus a corporate designation, the whole is *necessarily* no greater than the sum of its parts.

## B

This case requires us to apply these principles in the novel context of internet domain names. Respondent seeks to register a term, "Booking.com," that consists of a generic term, "booking" (known as the second-level domain) plus ".com" (known as the top-level domain). The question at issue here is whether a term that takes the form "generic.com" is generic in the ordinary course. In my view, appending ".com" to a generic term ordinarily yields no meaning beyond that of its constituent parts. Because the term "Booking.com" is just such an ordinary "generic.com" term, in my view, it is not eligible for trademark registration.

Like the corporate designations at issue in *Goodyear*, a top-level domain such as ".com" has no capacity to identify and distinguish the source of goods or services. It is merely a necessary component of any web address. See 1 McCarthy §7:17.50. When combined with the generic name of a class of goods or services, ".com" conveys only that the owner operates a website related to such items. Just as "Wine Company" expresses the generic concept of a company that deals in wine, "wine.com" connotes only a website that does the same. The same is true of "Booking.com." The

combination of "booking" and ".com" does not serve to "identify a particular characteristic or quality of some thing; it *connotes the basic nature of that thing*"—the hallmark of a generic term. *Blinded Veterans Assn.* v. *Blinded Am. Veterans Foundation*, 872 F. 2d 1035, 1039 (CADC 1989) (Ginsburg, J. for the court) (emphasis added; internal quotation marks omitted).

When a website uses an inherently distinctive second-level domain, it is obvious that adding ".com" merely denotes a website associated with that term. Any reasonably well-informed consumer would understand that "post-it.com" is the website associated with Post-its. See *Minnesota Min. & Mfg. Co.* v. *Taylor*, 21 F. Supp. 2d 1003, 1005 (Minn. 1998). Likewise, "plannedparenthood.com" is obviously just the website of Planned Parenthood. See *Planned Parenthood Federation of Am., Inc.* v. *Bucci*, 1997 WL 133313, \*8 (SDNY, Mar. 24, 1997). Recognizing this feature of domain names, courts generally ignore the top-level domain when analyzing likelihood of confusion. See *Brookfield Communications, Inc.* v. *West Coast Entertainment Corp.*, 174 F. 3d 1036, 1055 (CA9 1999).

Generic second-level domains are no different. The meaning conveyed by "Booking.com" is no more and no less than a website associated with its generic second-level domain, "booking." This will ordinarily be true of any generic term plus ".com" combination. The term as a whole is just as generic as its constituent parts. See 1 McCarthy §7:17.50; 2 *id.*, §12:39.50.

There may be exceptions to this rule in rare cases where the top-level domain interacts with the generic second-level domain in such a way as to produce meaning distinct from that of the terms taken individually. See *ante,* at 8, n. 4. Likewise, the principles discussed above may apply differently to the newly expanded universe of top-level domains, such as ".guru," ".club," or ".vip," which may "conve[y] information concerning a feature, quality, or characteristic" of

the website at issue. *In re North Carolina Lottery*, 866 F. 3d, at 1367; see also Brief for International Trademark Association as *Amicus Curiae* 10–11; TMEP § 1209.03(m). These scenarios are not presented here, as "Booking.com" conveys only a website associated with booking.

### C

The majority believes that *Goodyear* is inapposite because of the nature of the domain name system. Because only one entity can hold the contractual rights to a particular domain name at a time, it contends, consumers may infer that a "generic.com" domain name refers to some specific entity. *Ante*, at 9.

That fact does not distinguish *Goodyear*. A generic term may suggest that it is associated with a specific entity. That does not render it nongeneric. For example, "Wine, Inc." implies the existence of a specific legal entity incorporated under the laws of some State. Likewise, consumers may perceive "The Wine Company" to refer to some specific company rather than a genus of companies. But the addition of the definite article "the" obviously does not transform the generic nature of that term. See *In re The Computer Store, Inc.*, 211 USPQ 72, 74–75 (TTAB 1981). True, these terms do not carry the exclusivity of a domain name. But that functional exclusivity does not negate the principle animating *Goodyear*: Terms that merely convey the nature of the producer's business should remain free for all to use. See 128 U. S., at 603.

This case illustrates the difficulties inherent in the majority's fact-specific approach. The lower courts determined (as the majority highlights), that consumers do not use the term "Booking.com" to refer to the class of hotel reservation websites in ordinary speech. 915 F. 3d 171, 181–183 (CA4 2019); *ante,* at 7. True, few would call Travelocity a "Booking.com." *Ibid.* But literal use is not dispositive. See 915 F. 3d, at 182; *H. Marvin Ginn Corp.* v. *International Assn.*

*of Fire Chiefs, Inc.*, 782 F. 2d 987, 989–990 (CA Fed. 1986). Consumers do not use the term "Wine, Incs." to refer to purveyors of wine. Still, the term "Wine, Inc." is generic because it signifies only a company incorporated for that purpose. See *Goodyear*, 128 U. S., at 602–603. Similarly, "Booking, Inc." may not be trademarked because it signifies only a booking company. The result should be no different for "Booking.com," which signifies only a booking website.

More than that, many of the facts that the Court supposes may distinguish some "generic.com" marks as descriptive and some as generic are unlikely to vary from case to case. There will never be evidence that consumers literally refer to the relevant class of online merchants as "generic.coms." Nor are "generic.com" terms likely to appear in dictionaries. And the key fact that, in the majority's view, distinguishes this case from *Goodyear*—that only one entity can own the rights to a particular domain name at a time—is present in every "generic.com" case. See *ante*, at 9.

What, then, stands in the way of automatic trademark eligibility for every "generic.com" domain? Much of the time, that determination will turn primarily on survey evidence, just as it did in this case. See 915 F. 3d, at 183–184.

However, survey evidence has limited probative value in this context. Consumer surveys often test whether consumers associate a term with a single source. See 2 McCarthy §12:14–12:16 (describing types of consumer surveys). But it is possible for a generic term to achieve such an association—either because that producer has enjoyed a period of exclusivity in the marketplace, *e.g.*, *Kellogg Co.* v. *National Biscuit Co.*, 305 U. S. 111, 118–119 (1938), or because it has invested money and effort in securing the public's identification, *e.g.*, *Abercrombie*, 537 F. 2d, at 9. Evidence of such an association, no matter how strong, does not negate the generic nature of the term. *Ibid.* For that reason, some courts and the TTAB have concluded that survey evidence

is generally of little value in separating generic from descriptive terms. See *Schwan's IP, LLC* v. *Kraft Pizza Co.*, 460 F. 3d 971, 975–976 (CA8 2006); *Hunt Masters, Inc.* v. *Landry's Seafood Restaurant, Inc.*, 240 F. 3d 251, 254–255 (CA4 2001); *A. J. Canfield Co.* v. *Honickman*, 808 F. 2d 291, 301–303 (CA3 1986); *Miller Brewing Co.* v. *Jos. Schlitz Brewing Co.*, 605 F. 2d 990, 995 (CA7 1979); *In re Hikari Sales USA, Inc.*, 2019 WL 1453259, \*13 (TTAB 2019). Although this is the minority viewpoint, see 2 McCarthy §12:17.25, I nonetheless find it to be the more persuasive one.

Consider the survey evidence that respondent introduced below. Respondent's survey showed that 74.8% of participants thought that "Booking.com" is a brand name, whereas 23.8% believed it was a generic name. App. 66. At the same time, 33% believed that "Washingmachine.com"—which does not correspond to any company—is a brand, and 60.8% thought it was generic. *Ibid.*

What could possibly account for that difference? "Booking.com" is not *inherently* more descriptive than "Washingmachine.com" or any other "generic.com." The survey participants who identified "Booking.com" as a brand likely did so because they had heard of it, through advertising or otherwise. If someone were to start a company called "Washingmachine.com," it could likely secure a similar level of consumer identification by investing heavily in advertising. Would that somehow transform the nature of the term itself? Surely not. This hypothetical shows that respondent's survey tested consumers' association of "Booking.com" with a particular company, not anything about the term itself. But such association does not establish that a term is nongeneric. See *Kellogg*, 305 U. S., at 118–119; *Abercrombie*, 537 F. 2d, at 9.

Under the majority's approach, a "generic.com" mark's eligibility for trademark protection turns primarily on survey

data, which, as I have explained, may be an unreliable in-
dicator of genericness.  As the leading treatise writer in this
field has observed, this approach "[d]iscard[s] the predicta-
ble and clear line rule of the [PTO] and the Federal Circuit"
in favor of "a nebulous and unpredictable zone of generic
name and top level domain combinations that somehow be-
come protectable marks when accompanied by favorable
survey results."  1 McCarthy §7:17.50.  I would heed this
criticism.  In my view, a term that takes the form
"generic.com" is not eligible for federal trademark registra-
tion, at least not ordinarily.  There being no special circum-
stance here, I believe that "Booking.com" is a generic term
not eligible for federal registration as a trademark.

## II

In addition to the doctrinal concerns discussed above,
granting trademark protection to "generic.com" marks
threatens serious anticompetitive consequences in the
online marketplace.

The owners of short, generic domain names enjoy all the
advantages of doing business under a generic name.  These
advantages exist irrespective of the trademark laws.  Ge-
neric names are easy to remember.  Because they immedi-
ately convey the nature of the business, the owner needs to
expend less effort and expense educating consumers.  See
Meystedt, What Is My URL Worth? Placing a Value on Pre-
mium Domain Names, 19 Valuation Strategies 10, 12
(2015) (Meystedt) (noting "ability to advertise a single URL
and convey exactly what business a company operates"); cf.
Folsom & Teply, Trademarked Generic Words, 89 Yale L. J.
1323, 1337–1338 (1980) (Folsom & Teply) (noting "'free ad-
vertising' effect").  And a generic business name may create
the impression that it is the most authoritative and trust-
worthy source of the particular good or service.  See
Meystedt 12 (noting that generic domain names inspire
"[i]nstant trust and credibility" and "[a]uthority status in

an industry"); cf. Folsom & Teply 1337, n. 79 (noting that consumers may believe that "no other product is the 'real thing'"). These advantages make it harder for distinctively named businesses to compete.

Owners of generic domain names enjoy additional competitive advantages unique to the internet—again, regardless of trademark protection. Most importantly, domain name ownership confers automatic exclusivity. Multiple brick-and-mortar companies could style themselves "The Wine Company," but there can be only one "wine.com." And unlike the trademark system, that exclusivity is worldwide.

Generic domains are also easier for consumers to find. A consumer who wants to buy wine online may perform a keyword search and be directed to "wine.com." Or he may simply type "wine.com" into his browser's address bar, expecting to find a website selling wine. See Meystedt 12 (noting "ability to rank higher on search engines" and "ability to use existing type-in traffic to generate additional sales"); see also 915 F. 3d, at 189 (Wynn, J., concurring in part and dissenting in part). The owner of a generic domain name enjoys these benefits not because of the quality of her products or the goodwill of her business, but because she was fortunate (or savvy) enough to be the first to appropriate a particularly valuable piece of online real estate.

Granting trademark protection to "generic.com" marks confers additional competitive benefits on their owners by allowing them to exclude others from using *similar* domain names. Federal registration would allow respondent to threaten trademark lawsuits against competitors using domains such as "Bookings.com," "eBooking.com," "Booker.com," or "Bookit.com." Respondent says that it would not do so. See Tr. of Oral Arg. 55–56. But other firms may prove less restrained.

Indeed, why would a firm want to register its domain name as a trademark unless it wished to extend its area of

exclusivity beyond the domain name itself? The domain name system, after all, already ensures that competitors cannot appropriate a business's actual domain name. And unfair-competition law will often separately protect businesses from passing off and false advertising. See *Genesee Brewing Co.* v. *Stroh Brewing Co.*, 124 F. 3d 137, 149 (CA2 1997); 2 McCarthy §12:2.

Under the majority's reasoning, many businesses could obtain a trademark by adding ".com" to the generic name of their product (*e.g.*, pizza.com, flowers.com, and so forth). As the internet grows larger, as more and more firms use it to sell their products, the risk of anticompetitive consequences grows. Those consequences can nudge the economy in an anticompetitive direction. At the extreme, that direction points towards one firm per product, the opposite of the competitive multifirm marketplace that our basic economic laws seek to achieve.

Not to worry, the Court responds, infringement doctrines such as likelihood of confusion and fair use will restrict the scope of protection afforded to "generic.com" marks. *Ante,* at 12–13. This response will be cold comfort to competitors of "generic.com" brands. Owners of such marks may seek to extend the boundaries of their marks through litigation, and may, at times succeed. See, *e.g.*, *Advertise.com* v. *AOL, LLC*, 2010 WL 11507594 (CD Cal.) (owner of "Advertising.com" obtained preliminary injunction against competitor's use of "Advertise.com"), vacated in part, 616 F. 3d 974 (CA9 2010). Even if ultimately unsuccessful, the threat of costly litigation will no doubt chill others from using variants on the registered mark and privilege established firms over new entrants to the market. See Brief for Electronic Frontier Foundation as *Amicus Curiae* 19–20.

\*  \*  \*

In sum, the term "Booking.com" refers to an internet

booking service, which is the generic product that respondent and its competitors sell. No more and no less. The same is true of "generic.com" terms more generally. By making such terms eligible for trademark protection, I fear that today's decision will lead to a proliferation of "generic.com" marks, granting their owners a monopoly over a zone of useful, easy-to-remember domains. This result would tend to inhibit, rather than to promote, free competition in online commerce. I respectfully dissent.